**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**BALTIMORE DIVISION**

| | |
|---|---|
| LIBERTARIAN PARTY OF MARYLAND<br><br>        Plaintiff<br>    v.<br><br>MARYLAND STATE BOARD OF<br>ELECTIONS AND<br><br>LINDA LAMONE, ADMINISTRATOR,,<br>  MARYLAND STATE BOARD OF ELECTION | <br><br><br><br><br><br><br><br><br>Case No.   1:18CV02825-GLR |

**EMERGENCY MOTION TO STAY THE STAY STATE COURT PROCEEDINGS AND THE PRELIMINARY INJUNCTION**

The Libertarian Party of Maryland, moves this court, through its undersigned counsel, to immediately stay the state court proceeding and the preliminary injunction entered in state court to protect or effectuate this court's judgment.  In support of this motion, Plaintiffs submit a memorandum of law.

                                                                Respectfully submitted,

                                                                /s/April T. Ademiluyi

                                                                April Ademiluyi, Esq. .(Bar No 29141)
                                                                The Law Office of April T. Ademiliuyi
                                                                PO BOX 1248
                                                                Laurel, MD 20725
                                                                Ph: 443-393-3984
                                                                Fax: 443-393-0416
                                                                lawofficeata@gmail.com

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY

## FACTS

On June 7, 2018, the Libertarian Party of Maryland("MDLP") nominated April T. Ademiluyi for Judge of the Circuit Court for Prince George's County and on June 18, 2018, the Maryland State Board of Elections and its administrator Linda Lamone ("Lamone') certified her candidacy.  Four voters (collectively referred to as " CHALLENGERS") are registered democrats, republicans, or unaffiliated voters.  None of the CHALLENGERS are registered as members of the Libertarian Party.

On July 25, 2018, challengers brought suit to invalidate the MDLP nomination. CHALLENGERS simply allege that members of the Libertarian Party were not provided adequate notice of the nomination hearing as required by the party bylaws.  In addition, CHALLENGERS misinterpret the Libertarian Party bylaws to require that Ademiluyi must be registered Libertarian for the party to nominate her even though Ademiluyi is a judicial candidate.   Because CANDIDATE ADEMILUYI is a registered Democrat, CHALLENGERS were successful in invalidating the nomination. SBE did not oppose the merits of the CHALLENGERS claim thereby expressing approval of the challengers' application of election laws to MDLP's nomination.

## PROCEDURAL HISTORY

CHALLENGERS commenced suit on July 25, 2018 and served Ademiluyi on August 7, 2018.  CHALLENGERS filed a motion for preliminary injunction and temporary restraining order on August 15, 2018.  On August 17, 2018, CANDIDATE ADEMILUYI

immediately moved for an extension of time for her and the Maryland Libertarian Party to secure counsel and provide an adequate defense. The Circuit Court for Prince George's County disregarded CANDIDATE ADEMILUYI'S motion and held a hearing for a preliminary injunction on August 24, 2018. The Circuit Court of Prince George's County granted the preliminary injunction on August 24, 2018 without Ademiluyi presenting her defenses. The injunction only restrains the State Board of Elections from certifying a ballot with Candidate Ademiluyi on it. On August 27, 2018 CANDIDATE ADEMILUYI moved for dismissal of the complaint, or in the alternative a stay of the injunction pending appeal. The Circuit Court has not ruled on any of CANDIDATE ADEMILUYI'S pending motions. CANDIDATE ADEMILUYI was forced to immediately seek an interlocutory appeal to get some form of review but there has yet to be a recorded opinion and no Circuit court has ruled on her or the Maryland Libertarian Party's defenses. The Court of Appeals affirmed the preliminary injunction.

MDLP commenced this suit on September 11, 2018 and has not formally served counsel for SBE but he was informally provided with a copy of the complaint.

## ARGUMENT

First and foremost, the Fourth Circuit has addressed there is a need for this Court to stay the parallel state court proceeding under 28 USCA § 2283:

> While we appreciate that Congress intended for ERISA to operate primarily in the federal sphere, we do not believe that ERISA created the type of "unique" federal right or remedy that was at issue in *Mitchum*'s consideration of 42 U.S.C. § 1983. As the *Mitchum* Court acknowledged, an entirely new structure of law emerged in the post-Civil War era, and § 1983, in particular,

3

> "opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum,* 407 U.S. at 239, 92 S.Ct. at 2160. Section 1983 provides the quintessential example of a congressional act designed to displace state law. At its heart, § 1983 is meant to provide citizens with relief in those cases in which their rights have been violated under color of state law. It would make no sense to prohibit federal courts from enjoining on-going state proceedings if the entire purpose of the congressional enactment was to protect individuals from state action. *Id.* at 240, 92 S.Ct. at 2161; *see also id.* at 242, 92 S.Ct. at 2162 ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights.").

*Employers Res. Mgmt. Co. v. Shannon,* 65 F.3d 1126, 1131 (4th Cir. 1995)

The instant case is a routine ballot access restriction case brought under 42§USC1983. See *Colorado Common Cause v. Davidson*, No. 04CV7709, 2004 WL 2360485, at *8 (Colo. Dist. Ct. Oct. 18, 2004)( Virtually all constitutional challenges to state election schemes have been brought under § 1983, and no court of which I am aware has ever held or even suggested that § 1983 is not a proper procedural vehicle through which to bring those substantive constitutional claims.").  There has been no final determination in the parallel state court proceedings brought against MDLP. [1]  This Court could dispose of the entire action.

### A. MDLP'S CLAIMS

---

[1] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, (2005)( "[w]hen there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." )

4

It is well established that ballot-access restrictions "implicate substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932–33 (4th Cir. 2014). To assess whether a state election law can infringe those rights, the Supreme Court stated the court must weigh:

> the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Burdick v. Takushi,* 504 U.S. 428, 434, (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, (1983)). Therefore, the constitutional test of state election laws that impose a severe burden on ballot access are subjected to strict scrutiny and are upheld if they are "narrowly drawn to advance a state interest of compelling importance." A modest burden on ballot access, however, is upheld if "a State's important regulatory interests can justify reasonable, nondiscriminatory restrictions." *Pisano v. Strach*, 743 F.3d 927, 933 (4th Cir. 2014); *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 222 (1989)

### i. FIRST AMENDMENT RIGHTS MAGNITUDE OF THE BURDEN

The Supreme Court stated "A State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure that elections are orderly, fair, and honest." The Supreme Court in *Eu* struck down California's ban on primary endorsements and organization of the official governing bodies of the political parties. *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 215, (1989). The Supreme Court further articulated many examples in *Eu v. San Francisco Cty. Democratic Cent.*

*Comm* of when it was appropriate for the State to enact or enforce laws that interfere with the party's internal governance and noted that the laws were not directed at party leaders but an indirect consequence of ensuring a "order and fairness in elections." *Id.*

> " [A] State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. *Storer v. Brown,* 415 U.S., at 730, 94 S.Ct., at 1279. For example, a State may impose certain eligibility requirements for voters in the general election even though they limit parties' ability to garner support and members. See, *e.g., Dunn v. Blumstein,* 405 U.S., at 343–344, 92 S.Ct., at 1003–1004 (residence requirement); *Oregon v. Mitchell,* 400 U.S. 112, 118, 91 S.Ct. 260, 261–262, 27 L.Ed.2d 272 (1970) (age minimum); *Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621, 625, 89 S.Ct. 1886, 1888–1889, 23 L.Ed.2d 583 (1969) (citizenship requirement). We have also recognized that a State may impose restrictions that promote the integrity of primary elections. See, *e.g., American Party of Texas v. White,* 415 U.S., at 779–780, 94 S.Ct., at 1305–1306 (requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions); *id.,* at 785–786, 94 S.Ct., at 1308–1309 (limitation on voters' participation to one primary and bar on voters both voting in a party primary and signing a petition supporting an independent candidate); *Rosario v. Rockefeller, supra* (waiting periods before voters may change party registration and participate \*\*1025 in another party's primary); *Bullock v. Carter,* 405 U.S., at 145, 92 S.Ct., at 856–857 (reasonable filing fees as a condition of placement on the ballot).

*Id.*

In instant case, the State is silent and giving its approval of the voters, who are not members of MDLP, to regulate internal party governance but the State has not shown that it is necessary to the integrity of the electoral process.

> [T]he State has no interest in "protect[ing] the integrity of the Party against the Party itself." *Tashjian,* 479 U.S., at 224, 107 S.Ct., at 554…However,a State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure, any more than it can tell a party that its proposed communication to party members is unwise..

*Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. at 231–33.  In *S. Dakota Libertarian Party v. Gant,* however, a district court upheld the State's party affiliation

requirements for nominees. The Court explained that the statute advanced important state interests in preserving political parties as viable and identifiable groups, enhancing party building efforts, and guarding against party raiding and "sore loser" candidacies. The statute did not violate party's and candidate's First Amendment associational rights, where potential candidate was free to join party with nominal effort and requirement applied equally to all political groups. 60 F. Supp. 3d 1043 (D.S.D. 2014).

Surely one can change party affiliation quickly and changing bylaws is not a lengthy process either, but that's not the where the severe burden on the MDLP lies in this case. MDLP is severely burdened if any person who opposes the party's nominee can interpret their bylaws inconsistent in the manner in which the party interprets their bylaws and allege they're not following their bylaws and use this as basis to deny ballot access, the party will never get people nominated. In the instant case, one can simply invalidate party nominees or even decertify the party's recognized status through simply alleging that the party actions are violating state law if the party fails to reiterate in their bylaws that state law grants them the power to commit the act. The challengers in the suit, who are not registered Libertarians, even go as far as to complain of a lack of timely notice to members of the Central Committee and state it calls into question the integrity of the party.

### ii.     EQUAL PROTECTION MAGNITUDE OF THE BURDEN

The Fourth Circuit explained the Supreme Court's explanation of when rational basis test versus strict scrutiny applies to assessing the impermissible infringement of Equal Protection Clause:

7

> The Court also applied the "rational basis" test in upholding a state law which conditioned the right to vote in a party primary on the voter's registering as a party member thirty days prior to the previous general election. This registration date was eight months prior to the presidential primary and eleven months prior to the non-presidential primary. *Rosario v. Rockefeller,* 410 U.S. 752 (1973). Initially, the Court noted that the plaintiffs comprised a group of individuals who could have registered in time for the primary, but for one reason or another failed to do so. *Id.* at 755 and n. 4, 93 S.Ct. at 1248 and n. 4. The Court used this observation to distinguish those cases along the *Carrington-Dunn* line which had applied strict scrutiny.*Id.* at 757, 93 S.Ct. at 1249. The Court stated that, in the *Carrington-Dunn* line of cases, "the State [had] totally denied the electoral franchise to a particular class of residents, and there was no way in which the members of that class could have made themselves eligible to vote." *Id.* at 757, 93 S.Ct. at 1249. Comparing the statutes in the *Carrington-Dunn* line of cases to the New York statute before it, the Court stated that the New York statute "did not absolutely disenfranchise the class to which petitioners belong—newly registered voters who were eligible to enroll in a party before the previous general election." *Id.* The Court then concluded that to the extent the plaintiffs' "plight can be characterized as disenfranchisement at all, it was not caused by [the New York statute], but by their own failure to take timely steps to effect their enrollment." *Id.* at 758, 93 S.Ct. at 1250. The Court applied the "rational basis" test and upheld the statute.

*Greidinger v. Davis,* 988 F.2d 1344, 1350 (4th Cir. 1993)

Strict scrutiny must apply because Lamone has totally disenfranchised MDLP rights to nominate a candidate of their choosing. If there must be a distinction for judicial elections in party bylaws, then this law must be applied to all parties. Lamone's conduct now wishes to retroactively change the language on the nomination certificate form drafted by Lamone that MDLP is required to use to nominate its candidates. Lamone's nomination certificate form states in pertinent part,

> We, the undersigned officers of the Party Central Committee, hereby certify that we have followed the process required by Maryland Election Law and our party's Constitution and Bylaws and hereby nominate the following

8

>person, affiliated with our party, *except for judicial candidates*, for the office sought

Also, the candidate proofing checklist used by the State Board Elections notes that with regard to party affiliation, the State Board of Elections is to disregard the party affiliation of judicial candidates in accepting candidacy. Lamone accepted MDLP's nomination only to later acquiesce that MDLP should be treated differently than the Democrat and Republicans parties without any justification. MDLP was NOT on notice of an illegality with their nomination because challengers' suit is based on an inconsistent interpretation of the party bylaws than how they party interprets their own bylaws and discriminatory application of the election laws. Furthermore, because the suit was filed late and well beyond the deadline for MDLP to make changes to their nomination such as party affiliation or voter registration, there was nothing MDLP or its nominee could have done to ensure their nomination was eligible.

### B.  IRREPARABLE INJURY WILL RESULT WITHOUT A STAY

"Violations of First Amendment rights constitute *per se* irreparable injury" even if the infringement exist for a very short period of time. *Doe by Doe v. Shenandoah Cty. Sch. Bd.,* 737 F. Supp. 913, 915–16 (W.D. Va. 1990)(citing many cases).

The printing of the ballots began on September 12 in order to meet the federal mandated deadline to send out absentee ballots and it is MDLP and candidate Ademiluyi, not the State or voters who will suffer irreparable injury, if her name is removed from the ballot prior to resolving this case. Ex. 1 The harm would come from removing Ademiluyi from the ballot not allowing her to remain on the ballot. There are only seven candidates

and six positions on the ballot.  The weight of the challenge to Ademiluyi's qualifications are negligible in comparison to other qualifications issues the Court of Appeals held it was best to leave the unqualified or potentially unqualified candidate on the ballot.  Just a few months ago, in *Lamone v. Lewis*, the Court of Appeals held that although a series of events occurred after statutory deadlines that invalidated a certificate of candidacy, there was no harm in leaving in unqualified candidate's name, who was convicted of a crime, on the ballot. 2018 WL 3641867, at *13 (Md. July 31, 2018).  Likewise, *Liddy v. Lamone*, the Court of Appeals recognized the seriousness of a challenge to consider the constitutional qualifications of a candidate for office of Attorney General but decline to address it at the eleventh hour when the ballots had already been printed and voting began.  In the instant case, however, there is concern over whether Ademiluyi is a registered Democrat, Libertarian, or Republican for a position that is not held by any political party or used for the purpose of pushing political agendas.

### C.  THE PUBLIC INTEREST DEMANDS PLACING MDLP'S NOMINEE ON THE BALLOT

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982).  The public has an interest in voting for all nominees, such as MDLP's nominee, who are qualified to run for office.  MDLP's nominee has been in the spotlight long enough and voters have made up their minds.  There are seven candidates and six positions.  If MDLP's nominee is removed from the ballot, it

will dilute the power of the voters to choose the six candidates they wish to serve as Judge of the Circuit Court for Prince George's County.

## **CONCLUSION**

Plaintiff, MDLP, respectfully request that this Court stay the state court proceedings and the preliminary injunction pending in state court to sort out the federal issues in this case that could dispose of the entire case.

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on September 12,2018 via cmecf and email to all attorneys of record for the Defendants.

        Respectfully submitted,

        /s/April T. Ademiluyi

        April Ademiluyi, Esq. .(Bar No 29141)
        The Law Office of April T. Ademiliuyi
        PO BOX 1248
        Laurel, MD 20725
        Ph: 443-393-3984
        Fax: 443-393-0416
        lawofficeata@gmail.com