**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF MARYLAND, *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Action No. 1:18-cv-02825-GLR |
| MARYLAND STATE BOARD OF ELECTIONS, *et al.*, | * | |
| *Defendants*. | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO STAY STATE**
**COURT PROCEEDINGS AND PRELIMINARY INJUNCTION**

Defendants Maryland State Board of Elections (the "State Board") and Linda H. Lamone, in her capacity as State Administrator of Elections (together, the "State Defendants"), respectfully submit this Opposition to Plaintiff the Libertarian Party of Maryland's (the "Party") Emergency Motion to Stay the State Court Proceedings and the Preliminary Injunction [Dkt No. 2]. The Court should deny the requested stay for three principal reasons.

First, principles of federalism warrant deference to the ongoing proceedings in the Circuit Court for Prince George's County in the circumstances of this case. Here, the Party has asserted claims under 42 U.S.C. § 1983 alleging violations of its rights under the First and Fourteenth Amendments, but *trial scheduled for today* in the circuit court may resolve this dispute on state law issues, without the need for this Court to address the constitutional questions raised in this case. Accordingly, abstention pursuant to *Railroad Commission of*

*Texas v. Pullman Co.*, 312 U.S. 496 (1941), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), are both warranted in this case.

Second, even if the Court should decline to abstain under either of those doctrines, the Court is not required to stay the circuit court proceedings.  In fact, because the Party's constitutional claims are not likely to succeed on the merits, it should decline to disrupt the circuit court proceeding below by staying that case on the eve of trial.  The Party's claim under the First Amendment is likely to fail, because Maryland's requirement that nominations by "minor" political parties such as the Party be made "in accordance with the constitution and bylaws" of the party, *see* Md. Code Ann., Elec. Law § 5-701(3) (LexisNexis 2017), does not impermissibly encroach on the internal affairs of the Party.  And the Party's claim under the Fourteenth Amendment is likely to fail, because the Supreme Court has regularly upheld state regulation that requires different nominating processes for the traditional parties (*i.e.* Democrats and Republicans) and the minor parties, and in this case *both* the major and minor parties are required to honor the processes established by law for selecting nominees.

Finally, the specific relief that the Party requests of this Court—a "stay" of the circuit court proceeding and a "stay" of the preliminary injunction that had been entered by the circuit court and later affirmed by the Maryland Court of Appeals—is not likely to do it any good.  That is because the circuit court scheduled trial for today because this was the *last day* that the State Board can implement a ruling requiring ballots to change yet again.  Further delay would greatly diminish the relief available to the Party (and to candidate April Ademiluyi).  Moreover, the "stay" of the preliminary injunction it has

requested will not provide it with relief, because the State Defendants have already complied with that injunction and certified ballots for the general election.

The issues presented in this lawsuit are available to the Party and Ms. Ademiluyi to raise before the circuit court at trial today.  There is no reason to suspend those proceedings so that the parties begin once again in federal court and thereby disrupt the orderly process of the election.

## BACKGROUND

### State Court Proceedings

On July 25, 2018, four registered voters commenced an action in the Circuit Court for Prince George's County (the "circuit court") challenging the propriety under Maryland law of the Party's nomination of April Ademiluyi, who is the plaintiff's attorney in this case, to be the Party's candidate for Judge of the circuit court in November's general election.[1]  *See Egbuonnu v. Ademiluyi*, No. CAL18-26458 (Md. Cir. Ct., Prince George's Cty.).  Specifically, the *Egbuonnu* plaintiffs alleged that the nomination was invalid because Maryland law requires nominations by parties that do not select nominees by primary election (such as the Party) to be made "in accordance with the party's constitution and bylaws," Elec. Law § 5-701(3), and, in this case, the Party's nomination of Ms. Ademiluyi did not meet this requirement because Ms. Ademiluyi (a registered Democrat)

---

[1] Section 12-202 of the Election Law Article provides that a "registered voter may seek judicial relief from any act or omission relating to an election, whether or not the election has been held, on the grounds that the act or omission: (1) is inconsistent with this article or other law applicable to the elections process; and (2) may change or has changed the outcome of the election."  Elec. Law § 12-202(a).

was nominated in contravention to the requirement in the Party's constitution that all candidates of the Party to public office must be registered Libertarian.  Compl. [Dkt No. 1] ¶¶ 19, 25, 37.  The Party was named as a defendant in that case, as were its chairman, its treasurer, Ms. Ademiluyi, and the State Defendants.  *See* Compl. Ex. 5.

On August 15, 2018, after effecting service on the defendants, the *Egbuonnu* plaintiffs sought a temporary restraining order ("TRO") to prevent the State Board from certifying the general election ballots with Ms. Ademiluyi's name on it.  That same day, the circuit court declined to enter the requested TRO but scheduled an adversary hearing on the accompanying request for a preliminary injunction for August 24, 2018.  *See Egbuonnu*, Daily Sheet (Md. Cir. Ct., Prince George's Cty. Aug. 15, 2018) (attached hereto as Ex. A).

At the preliminary injunction hearing, the State Defendants raised the affirmative defenses of laches and limitations and argued that the *Egbuonnu* plaintiffs' delay in bringing and prosecuting their suit prejudiced the State Defendants with regard to the preparation of ballots in advance of the general election.  *See Egbuonnu*, Hearing Transcript. ("T.") 7-13, 44-50 (Md. Cir. Ct., Prince George's Cty. Aug. 24, 2018) (attached hereto as Ex. B).  The State Defendants proffered evidence that although state law required ballots to be certified no later than September 12, 2018, *see* Elec. Law §9-207(a)(2) ("at least 55 days before the election") the looming federal deadline of September 22, 2018, for providing military and overseas voters with absentee ballots, *see* 52 U.S.C. § 20302(a)(8)(A) (45 days before the election), required that the State Board certify ballots by September 7, 2018.  *See Egbuonnu*, Aff. of N. Walker (Md. Cir. Ct. Prince George's

4

Cty. Aug. 21, 2018) (the "Walker Aff.") [attached hereto as Ex. C]  The *Egbuonnu* plaintiffs' delay increased the likelihood that the case might not be resolved before ballots needed to be printed.  T. 49-50.

At the conclusion of the preliminary injunction hearing, the state court made findings of fact from the bench and issued its conclusions of law.  The court rejected the affirmative defenses of laches and limitations and concluded that the *Egbuonnu* Plaintiffs were likely to succeed on the merits of their claims and that the other preliminary injunction factors favored entry of the preliminary injunction.  *Id.* 50-56.  Accordingly, the court entered a preliminary injunction enjoining the State Defendants from certifying the general election ballot containing Ms. Ademiluyi's name on it as a candidate for Judge of the Circuit Court for Prince George's County.  *See* Compl. ¶ 15 & Ex. 2.

Ms. Ademiluyi promptly appealed from the circuit court's preliminary injunction order under the expedited appeal provisions of Election Law §§ 12-202(a)(3), (b). Argument in the Court of Appeals took place on September 6, 2018, and on that same day the Court of Appeals issued a *per curiam* order affirming the entry of the preliminary injunction, with an opinion to follow.  Compl. ¶18 & Ex. 3.

On September 7, the State Board certified the general election ballot without Ms. Ademiluyi's name it (as directed by the preliminary injunction), *see* Compl. ¶ 16; Elec. Law § 9-207(a), and posted the ballot for public display on its website, thereby triggering a two-day statutory period for challenges to the "content and arrangement" of the ballot to be asserted, *see id.* § 9-209(a).  At the conclusion of that two-day period, the State Board was authorized to begin printing the ballots.  *See id.* § 9-207(e).

On Monday, September 10, 2018, Ms. Ademiluyi filed a petition for judicial review of the content and arrangement of the ballot in the Circuit Court for Arundel County purportedly under authority of Election Law § 9-209. *See Ademiluyi v. State Bd. of Elections*, Notice of Emer. Pet. (Md. Cir. Ct., Anne Arundel Cty. Sept. 9, 2018) (attached hereto as Ex. D). The circuit court denied the petition.

Meanwhile, the Circuit Court for Prince George's County held a conference call with the parties and indicated that it was prepared—given the exigencies of the election calendar—to hear certain pending motions by telephone and schedule trial on the merits for Tuesday or Wednesday. But when the Court was informed about the proceedings in Anne Arundel County, it agreed to wait to hear the outcome of those proceedings before proceeding with any additional scheduling. Decl. of Andrea W. Trento (the "Trento Decl.") ¶ 2 (attached hereto as Ex. E).

On September 11, 2018, the circuit court, having been informed by the parties of the Circuit Court for Anne Arundel County's ruling the day before, once again sought to schedule trial. *Id.* ¶¶ 3-4. That same day, the Party commenced this action in federal court, and on September 12, 2018 filed its Emergency Motion to Stay.

Also on September 12, 2018, the circuit court heard argument on Ms. Ademiluyi's and the Party's motions for recusal and for dismissal and denied them both. Trento Decl. ¶ 5. The circuit court then scheduled trial for September 14, 2018, over Ms. Ademiluyi's counsel's objection that he and his client needed more time to prepare for trial, on the representation from the State Defendants that this was the last possible day for trial to occur so that ballots could be altered (if necessary) to reflect the outcome. *Id.* ¶ 5.

6

**The Allegations of the Complaint**

The Party asserts claims for violation of its "First Amendment Freedom of Associational, Expressive, and Voting Rights" and for violation of the Equal Protection Clause of the Fourteenth Amendment.  Compl. ¶¶ 37-56.

The Party premises its First Amendment claim on the theory that Plaintiff—and not a Maryland court—has the exclusive authority to interpret the Party's bylaws.  *See* Compl. ¶¶ 39-41.  Thus, the Party claims, the *Egbuonnu* Plaintiffs' challenge of the Party's nomination of Ms. Ademiluyi as not having been made "in accordance with the constitution and bylaws of the political party," Elec. Law § 5-701(3), was not justiciable by the circuit court and should have been dismissed.

The Party's Equal Protection Clause claim asserts that the statutory candidacy requirements for public office are governed by Election Law § 5-201, which provides that an "individual may become a candidate for a public or party office only if the individual satisfies the qualifications for that office established by law and, in the case of a party office, by party constitution or bylaws."  Compl. ¶ 46.  But, the Party argues, because the "qualifications for" judge of the circuit court "established by law" do not require the candidate to be a registered voter of the party that nominates her, *see* Elec. Law § 5-203, the State of Maryland's imposition of additional requirements, applicable solely to third parties, that nominations "shall be made in accordance with [the parties'] constitution and bylaws," Elec. Law § 5-701(3), amounts to a violation of the Equal Protection Clause. Compl. ¶¶ 52-56.  Plaintiff also alleges that both the "nomination certificate" form and the "candidate proofing checklist used by the State Board . . . to ensure that they accept all

7

candidates in accordance with election laws" are consistent with their theory that the State Board was required to "disregard the party affiliation of judicial candidates in accepting candidacy [filings]."  Compl. ¶¶ 50-51.

The Party seeks an injunction against the defendants enjoining them from applying the statutes in the manner they have, and preliminary and permanent injunctive relief "prohibiting [the defendants] from removing Ademiluyi from the general election ballots."  Compl. ¶¶ 57-59.

**The Motion to Stay**

Shortly after filing the Complaint, the Party filed its Emergency Motion to Stay seeking "to immediately stay the state court proceeding and the preliminary injunction entered in state court."  Pl.'s Mot. 1.  The Party argues that 42 U.S.C. § 1983 *requires* this Court to stay the state court proceedings. Pl.'s Mot. 3-4.  The Party also argues that the ballot access restrictions on minor parties imposed by Election Law § 5-701(3) do not satisfy constitutional scrutiny under *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Pl.'s Mot. 5-9.  Finally, the Party argues that it will be irreparably injured if a stay is not entered, and that the public interest supports a stay.  Pl.'s Mot. 10-11.

## ARGUMENT

### I. PRINCIPLES OF FEDERALISM PRECLUDE THIS COURT FROM STAYING THE STATE COURT PROCEEDINGS.

Initially, this Court should decline to stay the proceedings below under the abstention doctrines articulated by the Supreme Court in *Railroad Commission of Texas v.*

*Pullman Co.*, 312 U.S. 496 (1941), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

### A.   *Pullman* Abstention Applies in this Case.

"Pullman abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." *Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006). The doctrine "serves two primary goals: (1) avoiding constitutional questions when their resolution is unnecessary, and (2) allowing state courts to decide issues of state law." *Id.* at 246 n.6 (citing *Pullman*, 312 U.S. at 500).

Election Law § 5-201 provides in full as follows: "An individual may become a candidate for a public or party office only if the individual satisfies the qualifications for that office established by law and, in the case of a party office, by party constitution or bylaws." Elec. Law § 5-201. the Party alleges that the Defendants' interpretation of this provision amounts to an equal protection violation. *See* Compl. ¶ 47 ("SBE and Lamone are requiring for public office or a position not held by the party, the qualifications are set by Lection Law and MDLP bylaws but for the principal parties, Democrats and Republicans, the qualifications are only set by law."). The Party also alleges that "[i]t is the discriminatory application of § 5-201 and 5-701 to Ademiluyi's nomination that SBE and Lamone gave approval of that made it impossible for MDLP to nominate Ademiluyi." Compl. ¶ 52. The issue of the proper interpretation of §§ 5-201 and 5-701(3) of the Election Law article is one of several before the circuit court. The court could interpret these

provisions in a manner that avoids (or moots altogether) The Party's constitutional challenge.

Similarly, the Party alleges that "the nomination certificate" form used for third party nominations states:

> We, the undersigned officers of the Party Central Committee, hereby certify that we have followed the process required by Maryland Election Law and our party's Constitution and Bylaws and hereby nominate the following person, affiliated with our party, ***except for judicial candidates***, for the office sought.

Compl. ¶ 50 (emphasis in the original).  The Party alleges that it reasonably relied on the language of this form to conclude that it could nominate a candidate for judicial office who was not a registered Libertarian.  *Id.*  The Party also alleges that the candidate proofing checklist instructs State Board employees to "disregard the party affiliation of judicial candidates in accepting candidacy."  Compl. ¶ 51.  The circuit court may conclude that these provisions are dispositive, thereby avoiding the need to reach the Party's constitutional challenge.

Finally, the *Egbuonnu* Plaintiffs' claims ultimately depend on the interpretation of the Party's constitution.  While the State Defendants in that case agree with the *Egbuonnu* Plaintiffs that Maryland law requires third party nominations to be made "in accordance with the constitution and bylaws" of that party, the State Defendants take no position on how those instruments should be interpreted.  If the circuit court interprets the Party's constitution to *authorize* the party's nomination of Ms. Ademiluyi, then the constitutional issues raised in this proceeding will be moot.

10

Accordingly, the Court should deny the Party's Emergency Motion to Stay and abstain from further proceedings in this case until the potentially dispositive questions of state law are resolved by the Maryland courts.

**B. *Colorado River* Abstention Applies in this Case.**

In the alternative, the Court should abstain under the *Colorado River* doctrine.

"Under the principles of *Colorado River*, federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings and '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention. *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340–41 (4th Cir. 2002) (quoting *Colorado River*, 424 U.S. at 817). Although there is no "hard-and-fast" rule to apply to determine whether abstention would be appropriate, six factors have been identified to guide the analysis:

> (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others;
>
> (2) whether the federal forum is an inconvenient one;
>
> (3) the desirability of avoiding piecemeal litigation;
>
> (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;
>
> (5) whether state law or federal law provides the rule of decision on the merits; and
>
> (6) the adequacy of the state proceeding to protect the parties' rights.

*Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 19-27 (1983)). In the end, "abstention . . . may be granted only when 'the parallel state-court

litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 28).[2]

That is the situation here. The case is ready to proceed to trial in the circuit court, where all of the issues of law and fact raised by the Party in this suit may be raise in the Party's defense before the circuit court. Moreover, the applicable *Colorado River* factors articulated by the *Moses H. Cone* Court support abstention here.[3]

The second factor—whether the federal forum is inconvenient—weighs in favor of abstention. Here, the federal forum is inconvenient "not because of distance, as in *Colorado River*, but because of the stage of development of the state action." *Ackerman*, 821 F. Supp. 2d at 819. The parties have already litigated the issues in the circuit court below and in the Court of Appeals, and are at the eve of trial in the circuit court. Restarting litigation in federal court would be disruptive and inefficient, to say nothing of whether any relief provided by this Court could possibly come in time to result in a change to the ballots. The trial schedule gives sufficient time to provide meaningful relief to Ms. Ademiluyi and the Party, should the circuit court award such relief.

---

[2] The "threshold" question under *Colorado River* abstention is "whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006). That question is easily answered in the affirmative here. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). Both the Party and the State Defendants are parties to the proceeding below, and the issues raised by Plaintiff are available to the Plaintiff to raise in defending the action below.

[3] The first factor is inapplicable: "the subject matter of the litigation does not involve property 'where the first court may assume in rem jurisdiction to the exclusion of others.'" *Ackerman v. ExxonMobil Corp.*, 821 F. Supp. 2d 811, 819 (D. Md. 2012), *aff'd*, 734 F.3d 237 (4th Cir. 2013).

The third factor—avoiding piecemeal litigation—also supports abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Gannett Co. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) (internal citation and quotation marks omitted). Here, the Court would be adjudicating the same factual assertions and claims as the state court. Abstention would avoid piecemeal litigation and potentially inconsistent results.

The fourth factor—the order in which the courts obtained jurisdiction and the progress achieved in each action—also supports abstention. The *Egbuonnu* case has been pending since late July in the circuit court, and has been actively litigated for approximately one month at both the trial and appellate level. The circuit court has had several conferences with the parties and conducted a preliminary motions hearing. The case is scheduled for trial *today*. Here, the Party has filed a complaint and the parties have briefed, over a two-day period, whether this Court should stay the circuit court proceedings. "Plainly, this disparate progression of the cases weighs in favor of abstention." *Ackerman*, 821 F. Supp. 2d at 20.

The fifth factor—whether state or federal law supplies the rule of decision—also weighs in favor of abstention, because the state court could resolve the case entirely under state law, and thereby avoid the federal constitutional issues altogether.

Finally, the sixth factor—the adequacy of the state proceeding to protect the parties' rights—favors abstention, because ballots are due to be printed and any further delay in reaching the merits could result in the *inability* to afford relief to the Party (and to

Ms. Ademiluyi).  All of the issues raised in this proceeding are available to the Party (and to Ms. Ademiluyi) below.

## II.    EVEN IN THE ABSENCE OF ABSTENTION, THE MOTION TO STAY SHOULD BE DENIED.

Should this Court conclude that none of the foregoing doctrines requires abstention in this case, it should still deny Plaintiff's Motion.

The fact that the Court *may* enjoin state court proceedings under the Anti-Injunction Act does not mean that it *should*.  *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 151, (1988).  Enjoining a state proceeding under an exception to the Anti-Injunction Act statute is discretionary, and "[p]revention of frequent federal court intervention is important to make the dual system [of federal and state courts] work effectively." *Id.* at 146, 151.  Here, a stay is not warranted because the Party is not likely to succeed on the merits of its constitutional claims, and the stay that it has requested would not even provide the Party (or Ms. Ademiluyi) with meaningful relief.

### A.    Plaintiff Is Not Likely to Succeed on the Merits of Its Claims.

Plaintiff claims that its constitutional rights (and those of its members) will be violated if the circuit court interprets the Party's constitution to require its nominees to be registered to vote as Libertarians.  These claims are not likely to succeed.[4]

---

[4] Because the Party is not likely to succeed on the merits of its claims, it will not be irreparably harmed by denial of the Emergency Motion to Stay, and the public interest supports the denial of that motion.

### 1.  The Party's First Amendment Claims Are Unlikely to Succeed.

Maryland law requires that third party nominations be made "in accordance with the constitution and bylaws" of the party.  Elec. Law § 5-701(3).  It does not require any particular method for parties to undertake the nomination process; it has not "substitute[d] its judgment for that of the party as to the desirability of a particular internal party structure," *Eu v. San Francisco Count. Democratic Cent. Comm.* 489 U.S. 214, 227-28 (1989); and it did not require the Party to adopt the particular provision of its constitution at issue.  Instead, in the interests of "ensur[ing] that elections are fair and honest," the State of Maryland has established that third parties must follow the process they have adopted—whatever that may be—for determining nominees.  This does not regulate internal party governance any more than the requirement that all parties *have* a constitution and/or bylaws regulates internal party governance.

All elections regulations "invariably impose some burden upon individual voters." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992).  "[A]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some order, rather than chaos, is to accompany the democratic process."  *Storer v. Brown*, 415 U.S. 724, 730 (1974).  Accordingly, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789

(1983)). "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788).

Here, the burdens imposed by the requirement under Maryland law that third parties select nominees "in accordance with [their] constitution and bylaws" imposes a minimal burden on the Party's First Amendment rights. The Party is free to impose any qualifications requirements and adopt any selection process it wishes; it must simply follow the process it has selected. And the State's interest in promoting an orderly and fair process for elections is clearly furthered by this requirement. Requiring nominations to be made in accordance with the party's governing documents ensures order and predictability and avoids potentially competing claims to a party's nomination.

"A political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202-03 (2008) (citing *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981)). These rights are circumscribed, however, when the State gives the party a role in the election process—as Maryland does by giving certain political parties the right to have their candidates appear on the general-election ballot. *Id.* In such circumstances, "the State acquires a legitimate governmental interest in ensuring

the fairness of the party's nominating process, enabling it to prescribe what that process must be." *Id.* (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 572-73 (2000). The State of Maryland is well within its rights to require third parties to nominate candidates in accordance with their constitution and bylaws. *See, e.g.*, *American Party of Tex. v. White*, 415 U.S. 767, 781 (1974) (holding that a state may prescribe the use of primaries or conventions to select nominees who appear on the general-election ballot).

Plaintiff's First Amendment claims are not likely to succeed.

### 2.    Plaintiff's Equal Protection Claims Are Unlikely to Succeed.

There is no question that states can require different nomination processes for major parties and minor parties. *See, e.g.*, *American Party of Tex.*, 415 U.S. at 779-80 (upholding requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions).  And just as the Republicans and Democrats cannot ignore the results of primary elections in order to "nominate a candidate of their choosing," Pl.'s Mem. 8, so it is that the Party cannot disregard its constitution and bylaws in order to do the same.

The Party suggests that Maryland law treats the Party unequally because the major parties are not also required to make "a distinction for judicial elections in party bylaws." Pl.'s Mem. 8.  But neither the Republican nor Democratic party bylaws currently on file with the State Board [attached hereto as Exhibits F and G, respectively) imposes any party registration requirement at all for candidates for public office, and thus no "distinction for judicial elections" with regard to party affiliation needs to be made.  And in any event,

17

there is no dispute that the nomination requirements for the major parties for this contest (*i.e.*, nominating the winners of the primary election) were followed.

Finally, The Party's assertion that the State Board's own forms somehow estop it from rejecting the Party's nomination of Ms. Ademiluyi, *see* Pl.'s Mot. 8 ("Lamone's conduct now wishes to retroactively change the language on the nomination certificate form drafted by Lamone that MDLP is required to use to nominate its candidates."), is without merit. For one, it ignores that it was a *court order*, and not some "retroactive[] change" or "acquiesc[nce]" (*see* Pl.'s Mot. 8, 9) by the State Defendants, that prevented the State Board from certifying ballots with Ms. Ademiluyi's name on them. But even setting that aside, the language on the form states exactly what the law requires:

> We, the undersigned officers of the Party Central Committee, hereby certify that we have followed the process required by Maryland Election Law and our party's Constitution and Bylaws and hereby nominate the following person, affiliated with our party, except for judicial candidates, for the office sought

Pl.'s Mot. 8-9. Party officials signing this form affirm that they have "followed the process required by Maryland Election Law and our party's Constitution and Bylaws."

Maryland law allows parties to nominate judicial candidates who are not registered to vote as members of the party that has nominated them (*i.e.*, "affiliated with our party, except for judicial candidates"), but Maryland law also requires nominations to be made according to the "process required by . . . . our party's Constitution and Bylaws." The nomination form does not deviate from the requirements of Maryland law.[5]

---

[5] The same rationale applies to the "candidate proofing checklist" referenced in Plaintiff's Memorandum. *See* Pl.'s Mot. 9. And even if either form did deviate from Maryland law,

**B.       Plaintiff's Requested Stay Will Not Provide the Relief It Seeks.**

Plaintiff asks this Court to "stay the state court proceedings and the preliminary injunction pending in state court," Pl.'s Mot. 11, but it is not clear what true "relief" that will provide.

Trial has been scheduled in the circuit court for September 14, 2018, precisely because that is the last day that ballots can be altered to include Ms. Ademiluyi's name in advance of the federal deadline for delivering absentee ballots to military and overseas voters.   Further delay may moot the proceedings entirely as the general election approaches.  A stay of the proceedings in the circuit court would make eventual relief to the Party (and to Ms. Ademiluyi), should they prevail, that much more difficult to provide.

Also, the requested "stay" of the "preliminary injunction pending in state court" does not accurately reflect the current procedural posture of the circuit court proceedings, and thus could not provide the relief that Party is purportedly seeking.  On August 24, 2018, the circuit court entered a preliminary injunction enjoining the State Defendants from certifying ballots containing Ms. Ademiluyi's name on them.  On September 6, 2018, the Court of Appeals affirmed the preliminary injunction.  On September 7, 2018, the State Board certified general election ballots *without* Ms. Ademiluyi's name on them.  At this point, a "stay" of that preliminary injunction would have no effect on the already-certified ballots.

---

the State Board does not have the legal authority to alter State law via inconsistent forms. *See Salisbury Beauty Sch. v. State Bd. of Cosmetologists*, 268 Md. 32, 63 (1973) (stating that the "doctrine of estoppel will not be applied against the State in the performance of its governmental, public or sovereign capacity").

**CONCLUSION**

The plaintiff's motion motion to stay state court proceedings and preliminary injunction should be denied.

Respectfully submitted,

/s/ Julia Doyle Bernhardt
_____
JULIA DOYLE BERNHARDT
Federal Bar No. 25300

/s/ Andrea W. Trento
_____
ANDREA W. TRENTO
Federal Bar No. 28816
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jbernhardt@oag.state.md.us
atrento@oag.state.md.us
(410) 576-7291
(410) 576-6955 (facsimile)

September 14, 2018                        Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LIBERTARIAN PARTY OF        *
MARYLAND, *et al.*,
           *Plaintiffs*,      *

      v.                 *    Civil Action No. 1:18-cv-02825-GLR

MARYLAND STATE BOARD OF     *
ELECTIONS, *et al.*,
           *Defendants*.      *

   *     *     *     *     *     *     *     *     *     *     *     *     *

## CERTIFICATE OF SERVICE

I certify that on this 14th day of September 2018, the foregoing Opposition to Plaintiff's Emergency Motion to Stay the State Court proceedings and the Preliminary Injunction was filed and served electronically via CM/ECF, and served on all parties registered to receive service via such means.


/s/ Andrea W. Trento
_____
Andrea W. Trento