## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND BALTIMORE DIVISION

| | |
|---|---|
| **LIBERTARIAN PARTY OF** | **MARYLAND** |
| Plaintiff | |
| **v.** | |
| **MARYLAND STATE BOARD OF ELECTIONS AND** | |
| **LINDA LAMONE, ADMINISTRATOR,, MARYLAND STATE BOARD OF ELECTIONS** | Case No.   1:18CV02825-GLR |
| Defendants | |

## MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## FACTS

On June 7, 2018, the Libertarian Party of Maryland("MDLP") nominated April T. Ademiluyi for Judge of the Circuit Court for Prince George's County and on June 18, 2018, the Maryland State Board of Elections and its administrator Linda Lamone (collectively referred to as "Lamone') certified her candidacy.  Four voters (collectively referred to as "CHALLENGERS") are registered democrats, republicans, or unaffiliated voters.  None of the CHALLENGERS are registered as members of the Libertarian Party.

On July 25, 2018, challengers brought suit to invalidate the MDLP nomination. CHALLENGERS simply allege that members of the Libertarian Party were not provided adequate notice of the nomination hearing as required by the party bylaws.  In addition, CHALLENGERS misinterpret the Libertarian Party bylaws to require that Ademiluyi must be registered Libertarian for the party to nominate her even though Ademiluyi is a judicial candidate.   Because CANDIDATE ADEMILUYI is a registered Democrat, CHALLENGERS were successful in invalidating the nomination.  SBE did not oppose the merits of the CHALLENGERS claim thereby expressing approval of the challengers' application of election laws to MDLP's nomination.

## PROCEDURAL HISTORY

CHALLENGERS commenced suit on July 25, 2018 and served Ademiluyi on August 7, 2018.  CHALLENGERS filed a motion for preliminary injunction and temporary restraining order on August 15, 2018.   On August 17, 2018, CANDIDATE ADEMILUYI immediately moved for an extension of time for her and MDLP to secure counsel and provide an adequate defense.  The Circuit Court for Prince George's County disregarded CANDIDATE ADEMILUYI'S motion and held a hearing for a preliminary injunction on August 24, 2018.  The Circuit Court of Prince George's County granted the preliminary injunction on August 24, 2018 without Ademiluyi or MDLP presenting their defenses. T he injunction only restrains the State Board of Elections from certifying a ballot with Candidate Ademiluyi on it.   On August 27, 2018 CANDIDATE ADEMILUYI moved for dismissal of the complaint, or in the alternative a stay of the injunction pending appeal.

CANDIDATE ADEMILUYI was forced to immediately seek an interlocutory appeal to get some form of review. On September 6, 2018, the Court of Appeals affirmed the preliminary injunction but there has yet to be a recorded opinion. The Circuit Court denied all CANDIDATE ADEMILUYI'S pending dispositive motions on September 12, 2018.

MDLP commenced this suit on September 11, 2018. MDLP sought for this Court to stay the state court proceedings on September 12, 2018[ECF 2] and Lamone opposed the motion [ECF8].

On September 14, 2018, the Circuit Court for Calvert County terminated the proceedings and issued a declaratory judgment that Ademiluyi's candidacy for Judge of the Circuit Court is invalid. Exhibit 1 Unsigned Copy of Final Order for Prince George's County Circuit Court

## ARGUMENT

Under rule 65, this Court can issue a temporary restraining order without notice to the defendants until a full adversary hearing for preliminary injunction can be held. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999).* Because of the time constraints, this Court is well within its discretion to enter a temporary restraining order without a response from Lamone. *Id.* Lamone is on notice of this motion through ECF Sunday, September 16, 2018 at 3pm and did respond to the motion to stay the state Court proceedings through addressing the factors for temporary restraining order and preliminary injunction. [ECF8]. Should the temporary restraining order issue without further response from Lamone, this Court must promptly hold a hearing for preliminary

injunction at "the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character."  Rule 65(3).  Counsel for MDLP and Lamon's counsel communicated Sunday September 16, 2018 at 8:33 am via email.  If Lamone responds to this motion promptly and the temporary restraining order is promptly granted, MDLP still request due to the election calendar, that this court set a preliminary injunction hearing within seven days of September 17, 2018.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, (2008)(citations omitted).  A court of equity must "must balance the competing claims of injury consider the effect on each party of the granting or withholding of the requested relief and should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.  *Id* at 24 (citations omitted).


### A. MDLP PROPERLY SOUGHT RELIEF IN THIS COURT

The Supreme Court very thoroughly why abstention by this Court is prohibited in this case, in *Mitchum v. Foster*, when it said:

> Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.  It is clear from the legislative debates surrounding passage of s 1983's predecessor that the Act was intended to enforce the provisions of the Fourteenth Amendment 'against State action, . . . whether that action be executive, legislative, or

judicial.' Ex parte Virginia, 100 U.S. 339, 346, 25 L.Ed. 676 (emphasis supplied). ***Proponents of the legislation noted that state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights.***

*Mitchum v. Foster*, 407 U.S. 225, 238–40 (1972); *Employers Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1131 (4th Cir. 1995)(discussing the purpose of the Anti Injunction Act is protect citizens from state action occurring from an on- going state proceedings that violates people's federal rights and give the federal court the power to stay the state proceedings)

Furthermore, the Supreme Court stated in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, (2005), that it is well settled that when "[w]hen there is parallel state and federal litigation, *Rooker–Feldman* is not triggered simply by the entry of judgment in state court…"the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." The federal court, however, must give full faith and credit to the state judgment which would require recognizing and applying preclusion law. *Id*.; 28 U.S.C. § 1738; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293, (2005).

Preclusion law courts must consider is whether res judicata or collateral estoppel is applicable. In Maryland res judicata is only applied to when there is judgment between the same parties and their privies and the same cause of action. *MPC, Inc. v. Kenny,* 279 Md. 29, 32 (1977). Res Judicata is conclusive as to all matter litigated and that could have been raised. *Id.* To determine whether there is the same cause of action, Maryland courts apply the same evidence rule—whether the same evidentiary facts would sustain both actions. *Id*

at 33.  Collateral estoppel is invoked where the second suit is between the same parties but a different cause of action.  Id.  Any determination of fact in the first suit is binding on the second suit with estoppel. *Id.*

MDLP properly invoked concurrent federal jurisdiction to seek protection of its federal civil rights that the state court had no sympathy to protect.  MDLP did not appeal to the Maryland Court of Appeals and there has not been an attempt to litigate its deprivation of federal civil rights in the state court proceedings.  The instant case is a routine ballot access restriction case brought under 42USC§1983. See *Colorado Common Cause v. Davidson*, No. 04CV7709, 2004 WL 2360485, at *8 (Colo. Dist. Ct. Oct. 18, 2004)(Virtually all constitutional challenges to state election schemes have been brought under § 1983, and no court of which I am aware has ever held or even suggested that § 1983 is not a proper procedural vehicle through which to bring those substantive constitutional claims.").  Therefore, to protect and enforce MDLP's federal rights this Court must settle the controversy.

To this case, collateral estoppel might apply to relevant factual findings but res judicata does not apply.  Since the filing of the motion to stay the state court proceedings, there has been a final determination in the state court proceedings brought against MDLP. It is Lamone's conduct in state court that created MDLP's claims before this Court thus res judicata cannot be invoked.  This Court can fairly dispose of the entire action and determine that the state court judgment violates MDLP's federal civil rights.

## B.  LIKELIHOOD OF SUCEEDING ON THE MERITS

It is well established that ballot-access restrictions "implicate substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932–33 (4th Cir. 2014).  To assess whether a state election law can infringe those rights, the Supreme Court stated the court must weigh:

> the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'

*Burdick v. Takushi,* 504 U.S. 428, 434, (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, (1983)).  Therefore, the constitutional test of state election laws that impose a severe burden on ballot access are subjected to strict scrutiny and are upheld if they are "narrowly drawn to advance a state interest of compelling importance."  A modest burden on ballot access, however, is upheld if "a State's important regulatory interests can justify reasonable, nondiscriminatory restrictions."  *Pisano v. Strach*, 743 F.3d 927, 933 (4th Cir. 2014); *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 222 (1989); *Greidinger v. Davis,* 988 F.2d 1344, 1352 (4th Cir. 1993)(strict scrutiny applies when the state statutes make it difficult but not impossible for a new political party to obtain a position on the ballot and the statute will not prevail it was not narrowly tailored to meet state's interest).

### i. FIRST AMENDMENT RIGHTS MAGNITUDE OF THE BURDEN

The Supreme Court stated "a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure that elections are orderly, fair,

and honest." *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 215, (1989). The Supreme Court in *Eu* struck down California's ban on primary endorsements and organization of the official governing bodies of the political parties. *Id.* The Supreme Court further articulated many examples in *Eu* of when it is appropriate for the State to enact or enforce laws that interfere with the party's internal governance and noted that the laws were not directed at party leaders but an indirect consequence of ensuring a "order and fairness in elections." *Id.*

> "[A] State may enact laws that interfere with a party's internal affairs when necessary to ensure that elections are fair and honest. *Storer v. Brown,* 415 U.S., at 730, 94 S.Ct., at 1279. For example, a State may impose certain eligibility requirements for voters in the general election even though they limit parties' ability to garner support and members. See, *e.g., Dunn v. Blumstein,* 405 U.S., at 343–344, 92 S.Ct., at 1003–1004 (residence requirement); *Oregon v. Mitchell,* 400 U.S. 112, 118, 91 S.Ct. 260, 261–262, 27 L.Ed.2d 272 (1970) (age minimum); *Kramer v. Union Free School Dist. No. 15,* 395 U.S. 621, 625, 89 S.Ct. 1886, 1888–1889, 23 L.Ed.2d 583 (1969) (citizenship requirement). We have also recognized that a State may impose restrictions that promote the integrity of primary elections. See, *e.g.,American Party of Texas v. White,* 415 U.S., at 779–780, 94 S.Ct., at 1305–1306 (requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions); *id.,* at 785–786, 94 S.Ct., at 1308–1309 (limitation on voters' participation to one primary and bar on voters both voting in a party primary and signing a petition supporting an independent candidate); *Rosario v. Rockefeller, supra* (waiting periods before voters may change party registration and participate in another party's primary); *Bullock v. Carter,* 405 U.S., at 145, 92 S.Ct., at 856–857 (reasonable filing fees as a condition of placement on the ballot).

*Id.*

In instant case, the State is silent and giving its approval of the voters, who are not members of MDLP, to regulate internal party governance but the State has not shown that it is necessary to the integrity of the electoral process.

> [T]he State has no interest in "protect[ing] the integrity of the Party against
> the Party itself." *Tashjian,* 479 U.S., at 224, 107 S.Ct., at 554…However,a
> State cannot substitute its judgment for that of the party as to the desirability
> of a particular internal party structure, any more than it can tell a party that
> its proposed communication to party members is unwise..

*Id.* at 231–33.  In *South Dakota Libertarian Party v. Gant,* however, a district court upheld

the State's party affiliation requirements for nominees.  The Court explained that the statute

advanced important state interests in preserving political parties as viable and identifiable

groups, enhancing party building efforts, and guarding against party raiding and "sore

loser" candidacies.  The statute did not violate party's and candidate's First Amendment

associational rights, where potential candidate was free to join party with nominal effort

and the requirement applied equally to all political groups. 60 F. Supp. 3d 1043 (D.S.D.

2014).

Surely one can change party affiliation quickly and changing bylaws is not a lengthy

process either, but that's not the where the severe burden on the MDLP lies in this case.

MDLP is severely burdened if any person who opposes the party's nominee can interpret

their bylaws inconsistent in the manner in which the party interprets their bylaws and allege

they're not following their bylaws and use it as a basis to deny ballot access, the party will

never get candidates nominated.  In the instant case, one can simply invalidate party

nominees or even decertify the party's recognized status through simply alleging that the

party actions are violating state law and their bylaws, if the party fails to state in their

bylaws that state law grants them the power to commit the acts.  The challengers in the

suit, who are not registered Libertarians, even go as far as to complain of a lack of timely

notice to members of the Central Committee and allege it calls into question the integrity

of the party. The burden placed on MDLP in this case is insurmountable and can ultimately

doom the viability of the party.

## ii.    EQUAL PROTECTION MAGNITUDE OF THE BURDEN

The Fourth Circuit explained the Supreme Court's explanation of when rational basis

test versus strict scrutiny applies to assessing the impermissible infringement of Equal

Protection Clause:

> The Court also applied the "rational basis" test in upholding a state law
> which conditioned the right to vote in a party primary on the voter's
> registering as a party member thirty days prior to the previous general
> election. This registration date was eight months prior to the presidential
> primary and eleven months prior to the non-presidential primary. *Rosario v.
> Rockefeller,* 410 U.S. 752 (1973). Initially, the Court noted that the plaintiffs
> comprised a group of individuals who could have registered in time for the
> primary, but for one reason or another failed to do so. *Id.* at 755 and n. 4, 93
> S.Ct. at 1248 and n. 4. The Court used this observation to distinguish those
> cases along the *Carrington-Dunn* line which had applied strict scrutiny.*Id.*
> at 757, 93 S.Ct. at 1249. The Court stated that, in the *Carrington-Dunn* line
> of cases, "the State [had] totally denied the electoral franchise to a particular
> class of residents, and there was no way in which the members of that class
> could have made themselves eligible to vote." *Id.* at 757, 93 S.Ct. at 1249.
> Comparing the statutes in the *Carrington-Dunn* line of cases to the New
> York statute before it, the Court stated that the New York statute "did not
> absolutely disenfranchise the class to which petitioners belong—newly
> registered voters who were eligible to enroll in a party before the previous
> general election." *Id.* The Court then concluded that to the extent the
> plaintiffs' "plight can be characterized as disenfranchisement at all, it was
> not caused by [the New York statute], but by their own failure to take timely
> steps to effect their enrollment." *Id.* at 758, 93 S.Ct. at 1250. The Court
> applied the "rational basis" test and upheld the statute.

*Greidinger v. Davis,* 988 F.2d 1344, 1350 (4th Cir. 1993).

Strict scrutiny must apply because Lamone has totally disenfranchised MDLP

voting rights to nominate and vote for a candidate of their choosing.  If there must be a

distinction for judicial elections in party bylaws, then this law must be applied to all parties.

Lamone's conduct now wishes to retroactively change the language on the nomination

certificate form drafted by Lamone that MDLP is required to use to nominate its candidates.

Lamone's nomination certificate form states in pertinent part,

> We, the undersigned officers of the Party Central Committee, hereby certify
> that we have followed the process required by Maryland Election Law and
> our party's Constitution and Bylaws and hereby nominate the following
> person, affiliated with our party, ***except for judicial candidates***, for the office
> sought

Also, the candidate proofing checklist used by the State Board Elections notes that with

regard to party affiliation, the State Board of Elections is to disregard the party affiliation

of judicial candidates in accepting candidacy.  Lamone accepted MDLP's nomination only

to later acquiesce that MDLP should be treated differently than the Democrat and

Republicans parties without any justification.  *See e.g. Poindexter v. Strach*, No. 5:18-CV-

366-FL, 2018 WL 4016306, at *6 (E.D.N.C. Aug. 22, 2018)(discussing many cases where

its unfair for candidate to expend significant time and resources to qualify and expect that

they complied with the legal process to qualify only to have "the proverbial goalpost

[moved] in the midst of the game [s]tripping Plaintiffs of the opportunity to participate.")

MDLP was NOT on notice of an illegality with their nomination because challengers' suit

is based on an inconsistent interpretation of the party bylaws than how the party interprets

their own bylaws and discriminatory application of the election laws.  Furthermore,

because the suit was strategically filed late and well beyond the deadline for MDLP to

make changes to their nomination such as party affiliation or voter registration, there was

nothing MDLP or its nominee could have done to ensure their nomination was eligible or avoid the suit.

Indeed, as Lamone argued, the State can require for MDLP to nominate candidates according to its bylaws but the State cannot interpret the MDLP's bylaws in a manner that is inconsistent with the way MDLP interprets the very rules they promulgate.  Election Law §5-701 is a law that properly distinguishes among the parties for a nominating process. Election Law §5-201, however, on its face is neutral—it applies to all parties that the qualifications for public offices and party offices are established by law and the qualifications for party offices are established by law and party bylaws.  This court can look to other statutes in the election law article to ascertain the meaning of "public office" and "party office" such as Election Law §5-301(requiring candidates for public and party office to file certificates of candidacy with the State Board of Elections). *State v. Bey*, 452 Md. 255, 266 (2017) ("We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.").  Election Law §5-201 states in its entirety:

> An individual may become a candidate for a public or party office only if the individual satisfies the qualifications for that office established by law and, in the case of a party office, by party constitution or bylaws.

The definition of "public office" is Judge and the "party office" would be a senator or a delegate.   Lamone construes "qualifications…establish by law" in §5-201 to mean

qualifications of Judges are created by party by laws for only Libertarians but not Democrats and Republicans while the statute clearly uses the words "party bylaws" and confines it to establishing qualifications of party offices (not Judges) for all parties.

Lamone has no compelling interest to discriminate and her discriminatory application of the law is certainly not narrowly tailored to serve that interest.  Lamone is applying §5-201 in a discriminatory manner because she and counsel for the challengers believes it's unfair that MDLP can place judicial candidates on the ballot and avoid primary elections with all the time and expenses that go into primary elections. Exhibit 2 *Tr.* p34 lines 10-15. Transcript of Preliminary Injunction Hearing.  Maryland Election law §5-701(3), however, requires MDLP to forego primary elections.  Furthermore, Judge of the Circuit Court is a non partisan position thus the state has no interest in imposing MDLP to nominate candidates only affiliated with their party or to even put judicial candidates party affiliation in the spotlight or public eye.

### C.  BALANCING OF HARM TO PLAINTIFF VERSUS DEFENDANTS

Plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22, 129 S. Ct. 365, 375–76, 172 L. Ed. 2d 249 (2008).  "Violations of First Amendment rights constitute *per se* irreparable injury" even if the infringement exist for a very short period of time.  *Doe by Doe v. Shenandoah Cty. Sch. Bd.,* 737 F. Supp. 913, 915–16 (W.D. Va. 1990)(citing many cases).

The State Board must provide absentee ballots to military and overseas voters by September 22, 2018. 52 U.S.C. § 20302(a)(8)(A) ("not later than 45 days before the election"). and it is MDLP and candidate Ademiluyi, not the State or voters who will suffer irreparable injury, if her name is removed from the ballot prior to resolving this case.  The harm would come from removing Ademiluyi from the ballot not allowing her to remain on the ballot.  There are only seven candidates and six positions on the ballot.  The weight of the challenge to Ademiluyi's qualifications are negligible in comparison to other qualifications issues the Court of Appeals held it was best to leave the unqualified or potentially unqualified candidate on the ballot.  Just a few months ago, in *Lamone v. Lewis*, the Court of Appeals held that although a series of events occurred after statutory deadlines that invalidated a certificate of candidacy, there was no harm in leaving in unqualified candidate's name, who was convicted of a crime, on the ballot. 2018 WL 3641867, at *13 (Md. July 31, 2018).  Likewise, *Liddy v. Lamone*, the Court of Appeals recognized the seriousness of a challenge to consider the constitutional qualifications of a candidate for office of Attorney General but decline to address it at the eleventh hour when the ballots had already been printed and voting began.  In the instant case, however, there is concern over whether Ademiluyi is a registered Democrat, Libertarian, or Republican for a position that is not held by any political party or used for the purpose of pushing political agendas.

### D.  THE PUBLIC INTEREST IS IN FAVOR OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982).  The public has an interest in voting for all nominees, such as MDLP's nominee, who are qualified to run for office.  MDLP's nominee has been in the spotlight long enough and voters have made up their minds.  There are seven candidates and six positions.  If MDLP's nominee is removed from the ballot, it will dilute the power of the voters to choose the six candidates they wish to serve as Judge of the Circuit Court for Prince George's County.  Furthermore, if this Court can set a hearing by Monday, the absentee ballots will only be a week late because Lamone could have added candidate Ademiluyi to the ballot September 14, 2018 and still have met the federal deadline.

## E.  SECURITY

Under Rule 65(c), this Court has discretion to determine whether a bond is necessary to protect the party who could be found to have been wrongfully enjoined or restrained under a temporary restraining order or preliminary injunction. *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)("district court may dispense with filing of bond").

MDLP cannot afford to pay a bond and there is no need to set a bond.  Should this Court determine that MDLP's civil rights were not violated then votes cast in favor of their nominee would not be counted.  There are seven candidates and six positions thus the winner is easy to determine after this Court's final ruling.  Second, delaying the transmission of the absentee ballot for this court to set a hearing on the preliminary injunction within seven days also does not cause harm.  Friday, September 14, 2018 was the last day to add MDLP's nominee to the ballot to meet the federal deadline of September

22, 2018 to transmit the absentee ballots. Exhibit 3 (ECF8-5) Declaration of Andrea Trento. There is no harm in delaying the absentee ballots for up to one week.

## CONCLUSION

MDLP respectfully request that this Court enter a temporary restraining order to bypass the federal deadline for absentee ballot distribution; hold off on preparation and distribution of ballots until the preliminary injunction hearing is held; set a hearing for a preliminary injunction within 7 days, and enter a preliminary injunction.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on September 16, 2018 via cmecf and email to all attorneys of record for the Defendants.

Respectfully submitted,

/s/April T. Ademiluyi

April Ademiluyi, Esq. .(Bar No 29141)
The Law Office of April T. Ademiliuyi
PO BOX 1248
Laurel, MD 20725
Ph: 443-393-3984
Fax: 443-393-0416
lawofficeata@gmail.com