**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF MARYLAND, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:18-cv-02825-GLR |
| MARYLAND STATE BOARD OF ELECTIONS, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' OPPOSITION TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants Maryland State Board of Elections (the "State Board") and Linda H. Lamone, in her capacity as State Administrator of Elections (together, the "State Defendants"), respectfully submit this Opposition to Plaintiff the Libertarian Party of Maryland's (the "Party") Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") [Dkt No. 9]. The Court should deny the requested relief because the Party has failed to establish any of the four factors the Court must find before entering a preliminary injunction in the plaintiff's failure.

First, the Party is unlikely to succeed on the merits of its claims. Not only do the doctrines of res judicata and/or collateral estoppel require denial of the Party's motion, but the final judgment of the circuit court in the state proceeding, *Egbuonnu v. Ademiluyi*, No. CAL18-26458   (Md. Cir. Ct., Prince Georges Cty.) (the "State Proceeding") was fundamentally correct. The application of Maryland law to invalidate the nomination of Ms. April Ademiluyi – the Party's counsel in this case – for the office of Judge of the

Circuit Court for Prince George's County, did not violate the Party's First Amendment speech or associational rights, or its rights under the Equal Protection Clause of the Fourteenth Amendment.

Second, the Party will not be irreparably harmed by the absence of preliminary relief.  It is noteworthy that the Party did not make any evidentiary proffer as to how it would be "irreparably harmed" if, as the circuit court in the State Proceeding concluded, it were required to follow its own rules in nominating candidates for public office.  In any event, any "irreparable harm" suffered by Plaintiff would result not from the absence of preliminary injunctive relief, but from the clear and constitutional application of Maryland law to its nomination of Ms. Ademiluyi.

Third, the balance of equities weighs heavily in favor of denying the requested relief.  At this stage in the election calendar, the State Defendants would be unable to comply impending federal military and overseas absentee ballot deadlines if the Court should require a change to the ballots now.  Moreover, any such order would disrupt processes regarding the testing of voting equipment used in early voting and on election day that are now underway, jeopardizing the State Board's ability to complete necessary testing in advance of the election.

Finally, the public interest also supports denial of the requested relief, where the Party is unlikely to succeed on the merits and where the presence of an ultimately disqualified candidate on the ballot would result in voter confusion and erode public confidence in the electoral process.

## BACKGROUND

### Candidate Qualifications and Nominations

"An individual may become a candidate for a public . . . office only if the individual satisfies the qualifications for that office established by law."  Md. Code Ann., Elec. Law § 5-201 (LexisNexis 2017).[1]   To be qualified to be a candidate, an individual "must be a registered voter at an address that satisfies any residence requirement for the office that is imposed by law," and must be a "registered voter affiliated with the political party" that nominates her, *id.* §§ 5-202, 5-203(a)(2).  The party affiliation requirements "do not apply to a candidate for: (1) judicial office; or (2) a county board of education."  *Id.* § 5-203(b).

A candidate may be nominated for public office by one of three ways.

Nominations "shall be made":

    (1) By party primary, for candidates of a principal party;

    (2) By petition, for candidates not affiliated with any political party; or

    (3) In accordance with the constitution and by-laws of the political party, for candidates of a political party that does not nominate by party primary.

*Id.* § 5-701.

### Statutory Deadlines and Ballot Preparation

A candidate seeking to be nominated by a political party that does not nominate by

---

[1] In addition, a candidate for "party office . . . must satisfy the qualifications for that office established by law and . . . by party constitution or bylaws."  Elec. Law § 5-201. The office of Judge of the Circuit Court for Prince George's County is a public office.

party primary must submit both a "declaration of intent" and final nomination papers, including a certificate of nomination "signed by the officers of the political party."  Md. Code Ann., Elec. Law § 5-703.1(c) (LexisNexis Supp. 2017),  (d),  (e).  This year, the deadline to submit a "declaration of intent" was July 2, 2018, *see id.* § 5-703.1(c), and the deadline to submit final candidacy and nomination papers, including a certificate of nomination, was August 6, 2018, *see id.* § 5-703.1(d), (e).  Nominees could decline nominations through August 28, 2018, Elec. Law § 5-801(b)(2)(i) (LexisNexis 2017).  And if a vacancy in a nomination occurs as the result of the death or disqualification of the nominee, or the declination of the nomination, the party's local or state central committee had to the vacancy by September 7, 2018.  *Id.* § 5-1004(b).

On September 7, 2018, the State Board certified the content and arrangement of the general election ballots pursuant to Election Law § 9-207(a)(1).  *See* Decl. of Natasha Walker ¶ 6 (the "Walker Decl.") (attached hereto as Exhibit B).  Although the relevant statute did not require certification until September 12, *see* Elec. Law § 9-207(a)(1) (LexisNexis 2017) ("*at least* 55 days before the election" (emphasis added)), prompt action was necessary because of the impending September 22 deadline for providing absentee ballots to military and overseas voters as well as the testing of voting equipment in advance of early voting and election day.  Walker Decl. ¶¶ 4-5, 7-10.

After it certified ballots on September 7, 2018, the State Board placed the ballots on public display for a period of two days as required by Election Law § 9-207.  *Id.* ¶ 7.  Also on September 7, the State Board imported ballot styles into its MDVOTERS database so

that local election boards could proof ballot-style-to-precinct associations.[2]  *Id.*  The State Board also provided preliminary ballot data to its web delivery system programmer for testing of web-delivered absentee ballots.[3]

On September 10, 2018, after the required two days of public display, the State Board sent ballot PDFs to its printing vendor for the printing of early voting and general election ballots.  *Id.* ¶ 8.  On September 11, 2018, it sent test deck ballot PDFs to the printer. *Id.*[4]  It takes approximately two days to lay out the ballot styles and create the metal printing plates for each ballot style.  When ballot styles change, new ballot-style PDFs must be sent to the printer, and the pre-print production process must be redone.  *Id.* ¶ 8.

On September 11, 2018, the State Board sent ballot PDFs to the absentee printer and mailhouse.  *Id.* ¶ 9.  On September 12, 2018, the State Board assigned ballot styles to the voters who (to date) had requested an absentee ballot for the current election and provided ballot PDFs and ballot data files to the web delivery system programmer.  *Id.*  On September 13, 2018, the State Board sent absentee voter data to the absentee ballot printer and mailhouse.  *Id.*  Also on September 13, 2018, the absentee ballot printer provided

---

[2] This step serves as a check to make sure voters in each precinct across the State receive the correct ballot.  Walker Decl. ¶ 7.

[3] A registered voter may request an absentee ballot in person or request delivery by mail or by web delivery.  *See* Elec. Law § 9-305.

[4] Test decks are sets of pre-filled ballots used to test the vote tabulation machines, to ensure that the tabulators are properly configured to count votes for every candidate in a given contest.  Walker Decl. ¶ 5.  It takes approximately two weeks to print the test decks used to test these machines.  *Id.*  The testing process itself—known as "logic and accuracy" (or "L&A") testing—can take as long as three weeks for larger counties and testing must be complete for the general election by October 23, 2018.  *Id.*; *see* Code Md. Regs. 33.10.02.14.A(2)(a).

electronic proofs of the ballots to the State Board for review.  The web delivery system programmer also began to test the delivery system for accuracy using the final ballot data. *Id.*  On September 17, 2018, the State Board completed its review of the electronic proofs from the absentee ballot printer.  *Id.*

Beginning on September 18, 2018, the absentee ballot printer began printing ballots and preparing the packets for mailing to overseas and military voters.  *Id.* ¶ 10.  The first mail delivery will take place on September 21, 2018.  *Id.*  The first web delivery will take place on September 20, 2018.  *Id.*

On or around October 1, 2018, local boards of election will receive the printed test decks and early voting/general election ballots, and will begin L&A testing.  *Id.* ¶ 11.  This timetable allows ballots to be ready for delivery to military and overseas voters in compliance with the September 22 federal deadline.  It also allows for L&A testing to be completed by October 23, 2018, in accordance with the regulatory deadline.  *Id.*

**The Party's Nomination of Ms. Ademiluyi and the State Proceedings**

On June 7, 2018, the Party nominated Ms. Ademiluyi to be its nominee for the office of Judge of the Circuit Court for Prince George's County in this year's general election. Compl. ¶ 10.  On June 18, 2018, Ms. Ademiluyi filed candidacy and nomination papers with the State Board in support of the nomination.  Compl. ¶ 11 & Ex. 1.  On June 28, 2018, the State Board posted Ms. Ademiluyi's candidacy on its website's 2018 primary election list of candidates but with the notation "general election only."

On July 25, 2018, four registered voters commenced the State Proceeding in the Circuit Court for Prince George's County (the "circuit court") challenging the propriety

under Maryland law of the Party's nomination of Ms. Ademiluyi.  *See Egbuonnu v. Ademiluyi*, No. CAL18-26458 (Md. Cir. Ct., Prince George's Cty.).   Specifically, the *Egbuonnu* plaintiffs alleged that the nomination was invalid because Maryland law requires nominations by parties that do not select nominees by primary (such as the Party) to be made "in accordance with the party's constitution and bylaws."  Elec. Law § 5-701(3).  They alleged that the Party's nomination of Ms. Ademiluyi did not meet this requirement because Ms. Ademiluyi (a registered Democrat) was nominated in contravention to the requirement in the Party's constitution that all candidates of the Party to public office must be registered Libertarian.  Compl. ¶¶ 19, 25, 37.  The Party was a defendant in the State Proceeding, as were its chairman, its treasurer, Ms. Ademiluyi, and the State Defendants. *See* Compl. Ex. 5.

On August 24, 2018, the circuit court heard the *Egbuonnu* plaintiffs' motion for preliminary injunction.  *See Egbuonnu*, Hearing Transcript. 1 (Md. Cir. Ct., Prince George's Cty. Aug. 24, 2018) [Dkt No. 8-2].  At the conclusion of the preliminary injunction hearing, the circuit court made findings of fact from the bench and issued its conclusions of law.  The court concluded that the *Egbuonnu* Plaintiffs were likely to succeed on the merits of their claims and that the other preliminary injunction factors favored entry of the preliminary injunction.  *Id.* at 50-56.  Accordingly, the court entered a preliminary injunction enjoining the State Defendants from certifying the general election ballot containing Ms. Ademiluyi's name on it as a candidate for Judge of the Circuit Court for Prince George's County.  *See* Compl. ¶ 15 & Ex. 2.

Ms. Ademiluyi promptly appealed from the circuit court's preliminary injunction order under the expedited appeal provisions of Election Law §§ 12-202(a)(3), (b), and was joined in the appeal by the Party and its officers.  In the their memorandum to the Court of Appeals, the appellants' questions presented included whether the "Circuit Court's preliminary injunction and the Plaintiff Ebguonou's law suit [sic] infringe[d] the [Party's] rights under the Equal Protection Clause and Fourteenth Amendment to be free from discrimination and undue burden in placing candidates in the ballot?"  *See Ademiluyi v. Egbuonnu*, Sept. 2018 Term, No. 34, Appellants' Br. 7 (Md. 2018) ("Appellants' Br.") (attached hereto as Ex. A).  Argument in the Court of Appeals took place on September 6, 2018, and on that same day the Court of Appeals issued a *per curiam* order affirming the entry of the preliminary injunction, with an opinion to follow.  Compl. ¶18 & Ex. 3.

Shortly thereafter, the circuit court heard argument on several motions that had been pending during the appeal, and scheduled a final hearing on the merits for September 14, 2018, on the representation from the State Defendants that this was the last possible day for trial to occur so that ballots could be altered (if necessary) to reflect the outcome. *Id.* ¶ 5.  Decl. of Andrea W. Trento (the "Trento Decl.") ¶ 2 [Dkt No. 8-5].  At trial, the Party was represented by counsel but its officers were not present to give evidence. Nevertheless, counsel argued to the circuit court in summation that the Party's constitutional rights were infringed by the application of Maryland law to bar its nomination of Ms. Ademiluyi. At the conclusion of trial, the circuit court issued a declaratory judgment in favor of the *Egbuonnu* plaintiffs, declaring the Party's nomination of Ms. Ademiluyi to be null and void.

8

**Procedural History**

On September 11, 2018 – three days before the final hearing on the merits in the State Proceedings – the Party commenced this action.  In its Complaint, the Party asserts claims for violation of its "First Amendment Freedom of Associational, Expressive, and Voting Rights" and for violation of the Equal Protection Clause of the Fourteenth Amendment.  Compl. ¶¶ 37-56.

The Party premises its First Amendment claim on the theory that Plaintiff—and not a Maryland court—has the exclusive authority to interpret the Party's bylaws.  *See* Compl. ¶¶ 39-41.  Thus, the Party claims, the *Egbuonnu* Plaintiffs' challenge of the Party's nomination of Ms. Ademiluyi as not having been made "in accordance with the constitution and bylaws of the political party," Elec. Law § 5-701(3), was not justiciable by the circuit court and should have been dismissed.

The Party's Equal Protection Clause claim asserts that the statutory candidacy requirements for public office are governed by Election Law § 5-201, which provides that an "individual may become a candidate for a public or party office only if the individual satisfies the qualifications for that office established by law and, in the case of a party office, by party constitution or bylaws."  Compl. ¶ 46.  But, the Party argues, because the "qualifications for" judge of the circuit court "established by law" do not require the candidate to be a registered voter of the party that nominates her, *see* Elec. Law § 5-203, the State of Maryland's imposition of additional requirements, applicable solely to third parties, that nominations "shall be made in accordance with [the parties'] constitution and bylaws," Elec. Law § 5-701(3), amounts to a violation of the Equal Protection Clause.

Compl. ¶¶ 52-56.  The Party also alleges that both the "nomination certificate" form and the "candidate proofing checklist used by the State Board . . . to ensure that they accept all candidates in accordance with election laws" are consistent with their theory that the State Board was required to "disregard the party affiliation of judicial candidates in accepting candidacy [filings]."  Compl. ¶¶ 50-51.  The Party seeks an injunction against the defendants enjoining them from applying the statutes in the manner they have, and preliminary and permanent injunctive relief "prohibiting [the defendants] from removing Ademiluyi from the general election ballots."  Compl. ¶¶ 57-59.[5]

### The Motion for Temporary Restraining Order and Preliminary Injunction

On September 16, 2018, the Party filed its Motion for emergency relief, seeking a temporary restraining order to "bypass the federal deadline for absentee ballot distribution" and to enjoin further ballot preparation and distribution until a hearing on her request for preliminary injunction can be held.  Mem. of Law in Support of Emergency Mot. for TRO & Prelim. Inj. 16 ("Pl.'s Mem.").

### ARGUMENT

In order to obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

---

[5] On September 12, 2018, the Party filed an Emergency Motion to Stay the State Court Proceedings [Dkt No. 2].  On September 14, 2018, the State Defendants opposed this motion. *See* Defts.' Opp. To Emergency Mot. to Stay State Court Procs. & Prelim. Inj. [Dkt No. 8].  The final hearing on the merits held later on September 14, 2018, and the subsequent award of judgment to the *Egbuonnu* plaintiffs by the circuit court, rendered this motion moot.

injunction is in the public interest." *Winter v. Natural Resources Defense Council, inc.*, 555 U.S. 7, 21 (2008). The plaintiff must establish all four requirements and must make a "clear showing" that it is entitled to relief. *Id.* Here, the Party has failed to make that showing as to any of the four factors.

## I. THE PARTY IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS.

The Party's claims are likely barred by the doctrines of collateral estoppel and/or res judicata, and otherwise are likely to fail on their merits. The Motion should be denied for this reason alone.

### A. The Party's Claims are Barred by the Doctrines of Res Judicata and/or Collateral Estoppel.

On September 14, 2018, the circuit court entered final judgment in the State Proceedings. The Party was a defendant in that proceeding and was represented by counsel both in the earlier appeal to the Court of Appeals and at the final hearing on the merits. Both in the Court of Appeals and at the hearing on the merits, the Party *raised* the very issues that form the basis for its federal claims. Accordingly, Plaintiffs' claims are likely barred by the preclusion doctrines of res judicata and/or collateral estoppel.

"Under Maryland Law, the requirements of res judicata or claim preclusion are: 1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits."

11

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 392 (2000).[6]  Pursuant to this doctrine, "a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit." *Id.*  Thus, in order "[t]o avoid the vagaries of res judicata's preclusive effect, a party must assert all the legal theories he wishes to in his initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata." *Id.*

Collateral estoppel, on the other hand, "is not concerned with the legal consequences of a judgment, but only with the findings of ultimate fact, when they can be discovered, that necessarily lay behind that judgment." *Id.* at 391.  Maryland courts assess the applicability of collateral estoppel using a four-part test:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.*  Together, the doctrines of res judicata and collateral estoppel "are based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised."  *Id.*

---

[6] "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738 (1976)).

Here, both doctrines apply to bar the Party's claims.  In the State Proceeding, the Party and its officers were defendants in an action also involving the State Defendants, brought by four Prince George's County voters, challenging the Party's nomination of Ms. Ademiluyi as contrary to Maryland law.  In the Party Appellate Brief in the Court of Appeals, the Party specifically stated that the appeal presented questions as to whether the lawsuit "infringe[d] the [Party's] rights under the Equal Protection Clause and Fourteenth Amendment to be free from discrimination and undue burden in placing candidates in the ballot."[7]  Appellants' Br. 7.  And it argued that the effect of the then preliminary injunction in that case was to infringe the Party's "fundamental right to place candidates of their choice on the ballot," and to unlawfully discriminate against the Party by "constru[ing] Maryland law as to require that only the Libertarian Party bylaws must set the qualifications of judicial candidates."  *Id.* at 25.  These are precisely the issues raised in this case.  *See* Compl. ¶¶ 37-41 (alleging that the Party was unlawfully denied the right "to nominate candidates of their choice"); 42-49 (alleging that Maryland law unlawfully discriminates between major and minor parties by "require[ing] MDLP to make a distinction in their bylaws for the required party affiliation of judicial candidates but not make the same requirement for Democrats and Republicans").

Then, at the final hearing on the merits, the Party's counsel argued in closing that the State Proceeding itself was constitutionally defective.  He argued, "private parties"

---

[7] The Appellants also stated that the appeal presented the question of whether the lawsuit "infringe[d] Candidate Ademiluyi's due process rights and the right to run for public office."  Appellants' Br. 4

should not be able to "come into court and start litigating . . . against a minority political party because that minority party has federal rights under the First Amendment to associate together." *Egbuonnu v. Ademiluyi*, Closing Arguments Hr'g T. 32 (Md. Cir. Ct., Prince George's Cty. Sept. 14, 2018) ("Closing Argument T.") (attached hereto as Ex. C).[8] Counsel for the other parties in *Egbuonnu*, including counsel for the State Defendants, argued that the statutes in question *were* constitutional. *See id.* at 20-21, 40-42. The circuit court also noted on the record that the "constitutional issue" was "one of the last things I was talking to the law clerks about before we came in." *Id.* at 20.

The constitutional issues raised in this federal case – to the extent they were not raised in the State Proceeding at the final hearing on the merits – would have provided the Party with a complete defense in the State Proceeding. Moreover, the Party was aware of these issues and their pertinence to its defenses in the State Proceeding (as evidenced by its arguments on Appeal). To the extent the Party actually raised these issues at the final hearing on the merits, they were necessarily "decided" by the circuit court, which could not have awarded judgment to the *Egbuonnu* plaintiffs without concluding the statutes at issue were constitutional. To the extent that they were not raised in the State Proceeding, the doctrine of res judicata bars their assertion here.

In sum, the "judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been

---

[8] Due to the short timeframe for the briefing ordered by the Court, the court reporter was only able to prepare a transcript of the closing arguments from the final hearing on the merits in the State Proceeding.

raised," *Colandrea*, 361 Md. at 391, are squarely implicated by the circumstances of this case. The Party's claims are likely barred by res judicata and/or collateral estoppel.

### B. The Party's Claims Are Unlikely to Succeed on Their Own Merits.

Plaintiff claims that its constitutional rights (and those of its members) will be violated if the circuit court interprets the Party's constitution to require its nominees to be registered to vote as Libertarians. These claims are not likely to succeed.

### 1. The Party's First Amendment Claims Are Unlikely to Succeed.

Maryland law requires that third party nominations be made "in accordance with the constitution and bylaws" of the party. Elec. Law § 5-701(3). It does not require any particular method for parties to undertake the nomination process; it has not "substitute[d] its judgment for that of the party as to the desirability of a particular internal party structure," *Eu v. San Francisco Count. Democratic Cent. Comm.* 489 U.S. 214, 227-28 (1989); and it did not require the Party to adopt the particular provision of its constitution at issue. Instead, in the interests of "ensur[ing] that elections are fair and honest," the State of Maryland has established that third parties must follow the process they have adopted— whatever that may be—for determining nominees. This does not regulate internal party governance any more than the requirement that all parties *have* a constitution and/or bylaws regulates internal party governance.

All elections regulations "invariably impose some burden upon individual voters." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "[A]s a practical matter, there must be substantial regulation of elections if they are to be fair and honest and if some order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730

(1974).  Accordingly, "[a] court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).  "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance."  *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).  "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."  *Id.* (quoting *Anderson*, 460 U.S. at 788).

Here, the burdens on the Party's First Amendment rights imposed by the requirement under Maryland law that third parties select nominees "in accordance with [their] constitution and bylaws" are minimal.  The Party is free to impose any qualifications requirements and adopt any selection process it wishes; it must simply follow the process it has selected.  And the State's interest in promoting an orderly and fair process for elections is clearly furthered by this requirement.  Requiring nominations to be made in accordance with the party's governing documents ensures order and predictability and avoids potentially competing, *ex post* claims to a party's nomination.

"A political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who

best represents its political platform." *New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202-03 (2008) (citing *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981)).  These rights are circumscribed, however, when the State gives the party a role in the election process—as Maryland does by giving political parties that qualify under Maryland law (including the Party) the right to have their candidates appear on the general-election ballot.  *Id.*  In such circumstances, "the State acquires a legitimate governmental interest in ensuring the fairness of the party's nominating process, enabling it to prescribe what that process must be."  *Id.* (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 572-73 (2000).  Although authorized to do so under *Jones*, the State of Maryland *has not prescribed* what process third parties should follow in nominating candidates, but only that there should be a process and that it must be followed.  The State of Maryland is well within its rights to require third parties to nominate candidates in accordance with their constitution and bylaws.  *See, e.g.*, *.American Party of Tex. v. White*, 415 U.S. 767, 781 (1974) (holding that a state may prescribe the use of primaries or conventions to select nominees who appear on the general-election ballot).

The Party contends that its First Amendment rights are "severely burdened if any person who opposes the party's nominee can interpret their bylaws inconsistent in the manner in which the party interprets their bylaws and allege they're not following their bylaws and use it as a basis to deny ballot access."  Pl.'s Mem. 9.  In such circumstances, it claims, "the party will never get candidates nominated."  *Id.*  But this case was not brought by "any person," it was brought by four Prince George's County voters who are eligible to vote in the contest for which Ms. Ademiluyi would have been a nominee.  And

17

it was resolved not on the basis of the *Egbuonnu* plaintiffs' own interpretation of the Party's bylaws, but on that of the circuit court.  Contrary to the Party's assertion, "simply alleging that the party actions are violating state law and their bylaws" (*id.*) was not enough in this case to result in the removal of the Party's nominee from the ballot; it was an order of the court that did so.

### 2.    The Equal Protection Claims Are Unlikely to Succeed.

There is no question that states can require different nomination processes for major parties and minor parties. *See, e.g.*, *American Party of Tex.*, 415 U.S. at 779-80 (upholding requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions).  And just as the Republicans and Democrats cannot ignore the results of primary elections in order to "nominate a candidate of their choosing," Pl.'s Mem. 10, so it is that the Party cannot disregard its constitution and bylaws in order to do the same.

The Party suggests that Maryland law treats the Party unequally because "[i]f there must be a distinction for judicial elections in party bylaws, then this law must be applied to all parties."  Pl.'s Mem. 10-11.  But there is no "distinction for judicial elections in party bylaws" required by law.  It was the Party that *chose* to require in its constitution and bylaws that all of its nominees be registered Libertarians, and it was the party that *chose* not to exempt from that requirement nominations for judge of the circuit court.[9]  No state

---

[9] Neither the Republican nor Democratic party bylaws currently on file with the State Board require party nominees to be members of the party.  *See* Dkt Nos. 8-6, 8-7.

law forced its hand in this regard.  The Party's equal protection challenge is based on a faulty premise.

Nor was the State Defendants' compliance with the circuit court's preliminary injunction order somehow discriminatory.  The Party contends that "the language on the nomination certificate form [allegedly] drafted by Lamone" entitled them to their proffered nominee (whatever the requirements of the law), and that Ms. Lamone's (allegedly) "retroactively change[d]" this language and "acquiesce[d] that MDLP should be treated differently than the Democrat and Republicans parties without any justification."  Pl.'s Mem. 11.[10]  But it was a *court order*, and not some "retroactive[] change" or "acquiesc[nce]" by the State Defendants, that prevented the State Board from certifying ballots with Ms. Ademiluyi's name on them.  And in any event, the Party fails to explain how this alleged "retroactive[] change" gives rise to a violation of the Equal Protection Clause.

---

[10] Plaintiffs' interpretation of the language on the form is incorrect.  The language on the form states exactly what the law requires:

> We, the undersigned officers of the Party Central Committee, hereby certify that we have followed the process required by Maryland Election Law and our party's Constitution and Bylaws and hereby nominate the following person, affiliated with our party, except for judicial candidates, for the office sought

Pl.'s Mem. 11.  Maryland law allows parties to nominate judicial candidates who are not registered to vote as members of the party that has nominated them (i.e., "affiliated with our party, except for judicial candidates"), but Maryland law also requires nominations to be made according to the "process required by . . . . our party's Constitution and Bylaws." Even if this were ambiguous, the State Board does not have the legal authority to alter State law via inconsistent forms.  *See Salisbury Beauty Sch. v. State Bd. of Cosmetologists*, 268 Md. 32, 63 (1973) (stating that the "doctrine of estoppel will not be applied against the State in the performance of its governmental, public or sovereign capacity").

Finally, the Party's equal protection challenge based on Ms. Lamone's (alleged) interpretation of Election Law § 5-201, Pl.'s Mem. 12-13, makes no sense. Section 5-201 provides that "[a]n individual may become a candidate for a public or party office only if the individual satisfies the qualifications for that office established by law and, in the case of a party office, by party constitution or bylaws." Elec. Law § 5-201. The Party states (without support) that "public office" means "Judge," while "party office" refers to every other partisan office (e.g. "a senator or a delegate"). From there, the Party appears to assert that Ms. Lamone's (alleged) construction of the statute that only a candidate for "public office" (*i.e.* Judge) is subject to the "qualifications . . . established by law," and only the "Libertarians but not Democrats and Republicans" are subject to the statutory requirement that nominations be made in accordance with the party constitution and bylaws. *See* Mem. 12-13; Elec. Law § 5-701(3).

Here, too, the premise of the charge is faulty. Under Maryland law, "a position is held to be a public office when it has been created by law and casts upon the incumbent duties which are continuing in their nature and not occasional, and which call for the exercise of some portion of the sovereignty of the State." *Nesbitt v. Fallon*, 203 Md. 534, 544 (1954). By contrast, the term "party office clearly refer[s] only to . . . an office in a 'political party.'" 66 Md. Op. Att'y Gen. 142 (1981). Under this provision, candidates for public office must meet the requirements imposed by law, while candidates for party office must meet the requirements imposed both by law and party bylaw and constitution. A separate provision – Elec. Law § 5-701(3) – requires minor party nominations to be made "in accordance with the constitution and bylaws of the party" – but as noted above, the

State can permissibly prescribe different nomination mechanisms of major and minor parties,[11] and there is nothing remotely burdensome about requiring a party to follow its own procedures and requirements.  The Libertarian Party was free to impose additional qualifications on the candidates with whom it chose to associate itself via the nominations process in its constitution and bylaws, as it has apparently done.  But it must adhere to the requirements it has imposed.

In sum, the Party is unlikely to succeed on the merits of its claims.  That alone is sufficient to deny the requested relief.

## II. THE OTHER PRELIMINARY INJUNCTION FACTORS WEIGH AGAINST THE ENTRY OF INJUNCTIVE RELIEF.

The Party cannot satisfy the remaining preliminary injunction factors – namely, the likelihood that it will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.  To the contrary, those factors weigh heavily in favor of the denial of relief.

First, the Party is not likely to suffer irreparable harm because it is not likely to succeed on the merits of its claims.  Any harm that it will suffer arises from the clear and constitutional application of Maryland law, and not the absence of the entry of a preliminary injunction in this case.

By contrast, the balance of equities leans overwhelmingly in favor of the denial of preliminary injunctive relief.  As of the date of the filing of this opposition, the State Board's absentee ballot printer began to print ballots and prepare packets for mailing to

---

[11] *See Lopez Torres*, 552 U.S. at 202-03; *American Party of Texas*, 415 U.S. at 781.

military and overseas voters.  *See* Walker Decl. ¶ 10.  By the date of the hearing, web-delivery of absentee ballots will have begun.  *Id.*  An order requiring the State Board to revise ballots for Prince George's County voters to include Ms. Ademiluyi's candidacy would cause the State Board to miss the federal deadline for providing these ballots, but require it to recreate the PDFs, reassign absentee voters to the current election, and re-proof the ballots, *see id.* ¶ 9, resulting in a further delay of at least several days.

Just as importantly, the State Board has already commenced the printing of "test deck" ballots, which are used to test the voting equipment used at precincts across the state.  *Id.* ¶ 8.  The State Board sent the test decks for printing on September 11, 2018 – exactly one week ago.  *Id.*  Local elections boards should receive the test decks on or around October 1, 2018.  *Id.* ¶ 11.  The testing process takes approximately three weeks, and by law must be completed 14 days before the general election (*i.e.*, by October 23, 2018).  *See* Code Md. Regs. 33.10.02.14A(2)(a).  Early voting begins two days later, on October 25, 2018.  The entry of a preliminary injunction requiring the State Board to alter Prince George's County ballots to include Ms. Ademiluyi would require restarting that process, potentially delaying the testing of voting equipment and encroach upon the start of early voting.

The public interest also supports denial of the requested injunction.  The Party's suggestion that there is "no harm" in leaving an unqualified candidate's name on the ballot, *see* Mem. 14, ignores the risk of voter confusion and erodes public confidence in

the electoral process.[12]  The fact that there have been cases in the past where a

candidate's disqualification was decided too late in the process to be able to change

ballots,[13] does not mean that the public is not harmed by those circumstances.

## CONCLUSION

The Party's motion for temporary restraining order and preliminary injunction

should be denied.

Respectfully submitted,

/s/ Julia Doyle Bernhardt

_____

JULIA DOYLE BERNHARDT
Federal Bar No. 25300

/s/ Andrea W. Trento

_____

ANDREA W. TRENTO
Federal Bar No. 28816

---

[12] The Court of Appeals' ruling in *Lamone v. Lewin*, --- Md. ---, 2018 WL 3641867 (Md. July 31, 2018), is not to the contrary.  The Court's conclusion that the name of a candidate who had been convicted of a crime and who had engineered his own technical disqualification after the deadline for withdrawing from the race would remain on the ballot was based on its interpretation of mandatory statutory language that left no discretion to the Court or to the State Board to do otherwise.  *Id.* at *10.

Nor does *Liddy v. Lamone*, 398 Md. 233 (2007), stand for the proposition that an unqualified candidate can nevertheless remain on the ballot and be presented to the voters.  *See* Pl.'s Mem. 14.  In *Liddy*, the Court of Appeals reversed the lower court's ruling and directed that the claims be dismissed on laches grounds.  That defense was presented in the State Proceeding and rejected by the circuit court.  The more apt case would be.  *Liddy*, 398 Md. at 255 n.2.

[13] *See, e.g.*, *Liddy*, 398 Md. at 255 n.2 (noting that in *Abrams v. Lamone*, 398 Md. 146 (2007), the Court of Appeals ordered the State Board to "to post notices conspicuously in each polling location to inform voters that [the candidate] was not a candidate for the office of the Attorney General and that any votes cast for him would not be counted," because the candidate was adjudged to be disqualified too late to reprint ballots.

Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jbernhardt@oag.state.md.us
atrento@oag.state.md.us
(410) 576-7291
(410) 576-6955 (facsimile)

September 18, 2018                    Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF MARYLAND, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 1:18-cv-02825-GLR |
| MARYLAND STATE BOARD OF ELECTIONS, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of September 2018, the foregoing Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction was filed and served electronically via CM/ECF, and served on all parties registered to receive service via such means.

/s/ Andrea W. Trento
_____
Andrea W. Trento

The State Defendants proffered evidence that although state law required ballots to be certified no later than September 12, 2018, *see* Elec. Law §9-207(a)(2) ("at least 55 days before the election") the looming federal deadline of September 22, 2018, for providing military and overseas voters with absentee ballots, *see* 52 U.S.C. § 20302(a)(8)(A) (45 days before the election), required that the State Board certify ballots by September 7, 2018. *See* Decl. of Natasha Walker ¶ __ (the "Walker Decl.") (attached hereto as Ex. C.)  The *Egbuonnu* plaintiffs' delay increased the likelihood that the case might not be resolved before ballots needed to be printed.  T. 49-50.

On Monday, September 10, 2018, Ms. Ademiluyi filed a petition for judicial review of the content and arrangement of the ballot in the Circuit Court for Arundel County purportedly under authority of Election Law § 9-209.  *See Ademiluyi v. State Bd. of Elections*, Notice of Emer. Pet. (Md. Cir. Ct., Anne Arundel Cty. Sept. 9, 2018) (attached hereto as Ex. D).  The circuit court denied the petition.

On September 7, the State Board certified the general election ballot without Ms. Ademiluyi's name it (as directed by the preliminary injunction), *see* Compl. ¶ 16; Elec. Law § 9-207(a), and posted the ballot for public display on its website, thereby triggering a two-day statutory period for challenges to the "content and arrangement" of the ballot to be asserted, *see id.* § 9-209(a).  At the conclusion of that two-day period, the State Board was authorized to begin printing the ballots.  *See id.* § 9-207(e).

2

As relevant here, the State Board shall "determine whether an individual filing a certificate of candidacy meets the requirements of this article, including: (1) the voter registration and party affiliation requirements under Subtitle 2 of this title; and (2) the campaign finance reporting requirements under Title 13 of this article." Elec. Law § 5-301(b) (LexisNexis 2017).[14]

A registered voter "may seek judicial relief from any act or omission relating to an election . . . on the grounds that the act or omission: (1) is inconsistent with this article or other law applicable to the elections process; and (2) may change or has changed the outcome of the election." Elec. Law § 12-202(a) (LexisNexis 2017). As relevant here, a registered voter must bring the action within "10 days after the act or omission or the date the act or omission became known to the petitioner." *Id.* § 12-202(b)(1).

---

[14] An individual may not file a certificate of candidacy or a declaration of intent under Election Law § 5-703.1 until the individual establishes an authorized candidate campaign committee. Elec. Law § 13-202(c) (LexisNexis 2017).