### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND BALTIMORE DIVISION

| | |
|---|---|
| **LIBERTARIAN PARTY OF MARYLAND**<br><br>Plaintiff<br><br>**v.**<br><br>**MARYLAND STATE BOARD OF ELECTIONS AND**<br><br>**LINDA LAMONE, ADMINISTRATOR,, MARYLAND STATE BOARD OF ELECTIONS**<br><br>Defendants | Case No.   1:18CV02825-GLR |

### MEMORANDUM OF LAW REPLY TO OPPOSITION OF THE EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, (2008)(citations omitted).  A court of equity must "must balance the competing claims of injury consider the effect on each party of the granting or withholding of the requested relief and should

1

pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Id* at 24 (citations omitted).

## A. MDLP PROPERLY SOUGHT RELIEF IN THIS COURT

There are no obstacles to this Court's exercise of federal jurisdiction. This case presents a classic federal question as to whether the application of Election Laws §5-201 and/or §5-701 violate MDLP's first and fourteenth amendment rights. *Ex parte Young*, 209 U.S. 123, 145(1908) (federal question arising under the constitution grants federal court jurisdiction.). The instant case is a routine ballot access restriction case brought under 42USC§1983. *See e.g. Colorado Common Cause v. Davidson*, No. 04CV7709, 2004 WL 2360485, at *8 (Colo. Dist. Ct. Oct. 18, 2004)(Virtually all constitutional challenges to state election schemes have been brought under § 1983, and no court of which I am aware has ever held or even suggested that § 1983 is not a proper procedural vehicle through which to bring those substantive constitutional claims."). MDLP is seeking injunctive relief under 42USC §1983 and attorney fees, under 42USC §1988, Comp¶¶58-62 against the state. *Edelman v. Jordan*, 415 U.S. 651, 675–77, (1974)(citing Ex Parte Young that unless Eleventh Amendment immunity is waived, §1983 relief against the state is limited to injunctive relief and attorney fees but not damages. The sole purpose of MDLP's claims before this Court the Supreme Court expressed was the precise purpose of §1983:

> Proponents of the legislation noted that state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights.

*Mitchum v. Foster*, 407 U.S. 225, 238–40 (1972).

Furthermore, it is well settled when there is parallel state and federal litigation, a final state court judgment does not invoke the *Rooker Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, (2005). The federal court, however, must give full faith and credit to the state judgment which would require recognizing and applying preclusion law. *Id.*; 28 U.S.C. § 1738; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293, (2005).

This Court must apply the preclusion law of the state where the judgment occurred. *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006)(for preclusion principals, apply the law of the state where the federal district court sat in the first action). In Maryland res judicata is only applied to when there is judgment between the same parties and their privies and the same cause of action. *MPC, Inc. v. Kenny,* 279 Md. 29, 32 (1977). Res Judicata is conclusive as to all matter litigated and that could have been raised. *Id.* To determine whether there is the same cause of action, Maryland courts apply the same evidence rule—whether the same evidentiary facts would sustain both actions. *Id* at 33. Collateral estoppel is invoked where the second suit is between the same parties but a different cause of action. *Id.* Any determination of fact in the first suit is binding on the second suit with estoppel. *Id.*

Preclusion law likewise does not prohibit this court from addressing the merits of MDLP's §1983 claims. MDLP has not attempted to litigate its deprivation of federal civil rights in the state court proceedings. Moreover, MDLP's claims against Lamone are permissive cross-claims that are not barred by res judicata in a second action. "Simply put, "[a] party who decides not to bring [a permissive cross-claim] will not be barred by res

3

judicata, waiver, or estoppel from asserting it in a later action"). *Potomac Design, Inc. v. Eurocal Trading, Inc.,* 839 F. Supp. 364, 368 (D. Md. 1993)(quoting 6 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* § 1431 (1990)); *Martin v. Winston*, No. 0915 SEPT.TERM 2015, 2016 WL 4261097, at *6 (Md. Ct. Spec. App. Aug. 11, 2016); *Creighton v. Ruark,* 230 Md. 145, 150 (1962)(" Unless the parties are adversaries under the pleadings in the former suit, they have not had any opportunity to adjudicate their rights as between themselves, and under the Rule are not compelled to do so").

Nevertheless, applying the preclusion principles, Lamone and the challengers were not in privy and the same cause of action is lacking to satisfy res judicata. See e.g. *Haskins v. Hawk,* No. CIV.A. ELH-11-2000, 2013 WL 1314194, at *11 (D. Md. Mar. 29, 2013)(employer and employee not in privy because of potential conflict to protect their own interest). MDLP could not have brought §1983 claims against the challengers. Lamone and MDLP were also co-defendants, and this action is not between Lamone and MDLP. It is Lamone's conduct before and after the state court proceeding and the state court's application of the laws that created MDLP's claims before this Court thus the cause of action is not the same.

Collateral estoppel might apply to relevant factual findings but the Circuit Court's relevant factual findings comprised of undisputed facts. MDLP properly invoked concurrent federal jurisdiction to seek protection of its federal civil rights that the state court had no sympathy to protect.

Finally, Lamone is incorrect in stating that MDLP was a party to the appeal or that it attempted to litigate the issues brought before this court in state court.  MDLP did NOT file an appeal and there was an error including them on the title of brief.  Candidate Ademiluyi was the only party who filed an appeal.  Candidate Ademiluyi argued in her brief that if the Court of Appeals does not dismiss the case, then it should stay the election to allow time to determine whether MDLP's constitutional rights were violated because MDLP intended to pursue their claims in federal court as it is doing so now.  [ECF 11-1] p.25-26 of Ademiluyi 's Appeal Memo.  Under Maryland Rule 8-131, the Maryland Court of appeals cannot entertain arguments on appeal that were not raised below with the exception of subject matter jurisdiction.  Counsel for Ademiluyi and the MDLP argued for the first time on appeal and in oral argument to the Maryland Court of Appeals that the Circuit Court lacked subject matter jurisdiction—no standing to bring the case based upon federal law, Maryland law, and Maryland common law. [ECF 11-1] Ademiluyi's Appeal Brief p.13-14.  The brief demonstrates that the question presented with respect to MDLP's constitutional rights was not framed properly within the context of the brief.  Mistakes are inevitable with emergency cases and very little resources.  MDLP properly invoked federal jurisdiction to protect its federal civil rights.

### B.  LIKELIHOOD OF SUCCEEDING ON THE MERITS

It is well established that ballot-access restrictions "implicate substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments." *Pisano v. Strach*, 743 F.3d 927, 932–33 (4th Cir. 2014).  To determine whether the State's

infringement of those rights is permissible, the Courts must look to whether state election laws impose a severe burden on ballot access and if so, they are upheld only if they are "narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi,* 504 U.S. 428, 434, (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, (1983)). *Greidinger v. Davis,* 988 F.2d 1344, 1352 (4th Cir. 1993). A modest burden on ballot access, however, is upheld if "a State's important regulatory interests can justify reasonable, nondiscriminatory restrictions." *Pisano v. Strach*, 743 F.3d 927, 933 (4th Cir. 2014); *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 222 (1989).

First and foremost, MDLP cautions the Court to not allow Lamone to confuse the court with the nomination process versus the qualifications necessary to be eligible to undergo the nomination process. It's quite simple. Qualifications are age, residence, voter registration, and party affiliation. Nomination is a process or a mechanism by which a candidate has acquired sufficient votes to appear on the general election ballot. A candidate must first meet the qualifications to be eligible to undertake the nomination process. Title 5 of the Maryland elections laws are categorized into Subtitle 2 for qualifications and Subtitle 7 for nomination.

This case boils down to whether the State can dictate if and how MDLP bylaws convey the qualifications of candidates who seek their nomination for the general election. Md. Election Law §5-201 states that Maryland law and party bylaws for all parties set the qualifications for candidates for partisan offices and Maryland law sets the qualifications for nonpartisan offices. Md. Election Law §5-701 states that the nomination process for Democrats and Republicans is by party primary; for MDLP in accordance with party

bylaws; and for independents by petition. The MDLP bylaws chooses to go above the qualifications set by Maryland law in Election Law §5-203 Voter Registration and Party Affiliation for partisan offices and it states in its bylaws that one must be registered Libertarian at the time they seek the nomination until the general election. Compl¶25; *Cf. Cabrera v. Penate*, 439 Md. 99, 115 (2014)(holding that Election law §5-203 Voter Registration and Party Affiliation requires that the candidate must be affiliated with the party whose nomination he or she seeks at the time of filing the certificate of candidacy. Lamone agrees when she stated:

> The Libertarian Party was free to impose additional qualifications on the candidates with whom it chose to associate itself via the nominations process in its constitution and bylaws, as it has apparently done. But it must adhere to the requirements it has imposed. "

*Lamone's Opposition to Motion* p. 20. The MDLP party bylaws, however, are silent on the qualifications of judges because they are set by Maryland law not party bylaws. With respect to the nomination process, the MDLP bylaws does adequately covey that—60% vote of the central committee is required. Compl¶8.

Lamone concedes they have no right to interpret party bylaws but argue that because MDLP chooses to address qualifications, their bylaws are confusing and should carefully distinguish between non-partisan offices and partisan offices. *Lamone's Opposition* p. 18-19. MDLP, however, is not confused by the bylaws they drafted and they understand that the qualifications of candidates they discuss in their bylaws only pertain to partisan positions (senator, delegate, etc). The Supreme Court stated in *Eu v. San Francisco Cty. Democratic Cent. Comm,* that the State cannot tell the party it's unwise the way it chooses

7

to communicate with itself or how to govern itself; and the state can't substitute its judgment for that of the party's in the way it chooses to operate. 489 U.S. 214, 231-233 (1989). The State concedes that it is acceptable for the Democrats and Republicans bylaws to choose not to address the qualifications of candidates for partisan offices (Senator, Delegate) or non-partisan offices (Judges) but yet it chooses to harass MDLP.

Lamone's discriminatory application of the election law pertains to the qualifications of candidates not the nomination process. The parties do not disagree that Election Law §5-701 properly distinguishes among the parties to set different nominating processes. Election Law §5-201, however, on its face is neutral—it applies equally to all parties that the qualifications for public offices (Judge) and party offices (Senator, Delegate, etc) are established by law and the qualifications for party offices are established by law and party bylaws. Lamone's conduct now wishes to retroactively change the language on the nomination certificate form drafted by Lamone that MDLP is required to use to nominate its candidates. Lamone's nomination certificate form states in pertinent part,

> We, the undersigned officers of the Party Central Committee, hereby certify that we have *followed the process required by Maryland Election Law and our party's Constitution and Bylaws* **and** hereby nominate the following person, affiliated with our party, *except for judicial candidates*, for the office sought

The certificate clearly distinguishes between party affiliation qualifications and the nomination process. [ECF1-2] page 4 of 5. Also, the candidate proofing checklist used by the State Board Elections notes that with regard to party affiliation, the State Board of

Elections is to disregard the party affiliation of judicial candidates in accepting candidacy. [ECF1-2] page 5 of 5.

### i. FIRST AMENDMENT RIGHTS MAGNITUDE OF THE BURDEN

The Supreme Court stated "a State cannot justify regulating a party's internal affairs without showing that such regulation is necessary to ensure that elections are orderly, fair, and honest." *Eu,* 489 US at 215.  The Supreme Court in *Eu* struck down California's ban on primary endorsements and organization of the official governing bodies of the political parties. *Id.*  The Supreme Court further articulated many examples in *Eu* of when it is appropriate for the State to enact or enforce laws that interfere with the party's internal governance and noted that the laws were not directed at party leaders but an indirect consequence of ensuring a "order and fairness in elections." *Id.*

MDLP is severely burdened if any person who opposes the party's nominee can interpret their bylaws inconsistent in the manner in which the party interprets their bylaws and allege they're not following their bylaws as a basis to challenge ballot access, the party will never get candidates nominated.  In the instant case, challengers were successful in invalidating MDLP's nominee through simply alleging that the party actions are violating state law and their bylaws because the party fails to state in their bylaws that state law granted them the power to nominate a judicial candidate unaffiliated with their party. Indeed, as Lamone argued, the State can require for MDLP to nominate candidates according to its bylaws but the State cannot interpret the MDLP's bylaws in a manner that is inconsistent with the way MDLP interprets the very rules they promulgate.  MDLP

contends that it did follow its bylaws in nominating Ademiluyi. *See* Affidavit of Chair and Secretary; [ECF1-2] p4 of 5 Nomination Certificate. The challengers in the suit, who are not registered MDLPs, even go as far as to complain of a lack of timely notice to members of the Central Committee and allege it calls into question the integrity of the party. The State's interpretation of the party bylaws creates an insurmountable burden in nominating candidates and it establishes a dangerous precedent that could jeopardize the life of this party.

### ii.  EQUAL PROTECTION MAGNITUDE OF THE BURDEN

The Fourth Circuit explained the Supreme Court's explanation of when rational basis test versus strict scrutiny applies to assessing the impermissible infringement of Equal Protection Clause. *Greidinger v. Davis,* 988 F.2d 1344, 1350 (4th Cir. 1993) ("Strict scrutiny applies where the state "electoral franchise to a particular class of residents, and there was no way in which the members of that class could have made themselves eligible to vote" and rational basis applied when "to the extent the plaintiffs' "plight can be characterized as disenfranchisement at all, it was not caused by [the New York statute], but by their own failure to take timely steps to effect their enrollment.").

Strict scrutiny must apply to the discriminatory application of §5-201 because Lamone has totally disenfranchised MDLP's voting rights to nominate and vote for a candidate of their choosing. Lamone accepted MDLP's nomination on the condition that they certify that the nomination process in their bylaws was followed and the party affiliation qualification is irrelevant only to later acquiesce that with respect to candidate

qualifications, MDLP should be treated differently than the Democrat and Republicans parties without any justification. *See e.g. Poindexter v. Strach*, No. 5:18-CV-366-FL, 2018 WL 4016306, at *6 (E.D.N.C. Aug. 22, 2018)(discussing many cases where its unfair for candidate to expend significant time and resources to qualify and expect that they complied with the legal process to qualify only to have "the proverbial goalpost [moved] in the midst of the game [s]tripping Plaintiffs of the opportunity to participate.")  Lamone's nomination certificate form states in pertinent part,

> We, the undersigned officers of the Party Central Committee, hereby certify that we have followed the process required by Maryland Election Law and our party's Constitution and Bylaws *and* hereby nominate the following person, affiliated with our party, *except for judicial candidates*, for the office sought

[ECF1-2] page 4 of 5. Also, the candidate proofing checklist used by the State Board Elections notes that with regard to party affiliation, the State Board of Elections is to disregard the party affiliation of judicial candidates in accepting candidacy.  Lamone's discriminatory application of elections laws was launched in support of a suit strategically initiated beyond the August 6, 2018 deadline (Ademiluyi affidavit as to service of complaint) for MDLP to make changes to their nomination such as bylaws, party affiliation, or voter registration, thus there was nothing MDLP or its nominee could have done to ensure their nomination was eligible or avoid the suit.

    **iii.   LAMONE HAS NO COMPELLING INTEREST TO INFRINGE UPON MDLP's FIRST AND FOURTEENTH AMENDMENT RIGHTS**

Lamone has no compelling interest to discriminate and her discriminatory application of the law is certainly not narrowly tailored to serve that interest.  Lamone is applying §5-

201 in a discriminatory manner because she and counsel for the challengers believes it's unfair that MDLP can place judicial candidates on the ballot and avoid primary elections with all the time and expenses that go into primary elections. Exhibit 2 *Tr.* p34 lines 10-15. Transcript of Preliminary Injunction Hearing. Maryland Election law §5-701(3), however, requires MDLP to forego primary elections. The Supreme Court has said minor party nominating through conventions and major parties through primaries is what is fair.

> We have also recognized that a State may impose restrictions that promote the integrity of primary elections. See, *e.g.,American Party of Texas v. White,* 415 U.S., at 779–780, 94 S.Ct., at 1305–1306 (requirement that major political parties nominate candidates through a primary and that minor parties nominate candidates through conventions);
> *Eu v. San Francisco Cty. Democratic Cent. Comm.,* 489 U.S. 214, 215, (1989).

Lamone is attempting to regulate internal party governance but Lamone has not shown that it is necessary for the integrity of the electoral process.

> [T]he State has no interest in "protect[ing] the integrity of the Party against the Party itself." Tashjian, 479 U.S., at 224, 107 S.Ct., at 554…a State cannot substitute its judgment for that of the party as to the desirability of a particular internal party structure, any more than it can tell a party that its proposed communication to party members is unwise.

*Id.* at 231–33. In *South Dakota Libertarian Party v. Gant,* however, a district court upheld the State's party affiliation requirements for nominees where potential candidate was free to join party with nominal effort and the requirement ***applied equally*** to all political groups. 60 F. Supp. 3d 1043 (D.S.D. 2014). Judge of the Circuit Court is a non-partisan position thus the state has no interest in imposing MDLP to nominate candidates only affiliated with their party or to even discuss judicial candidates' party affiliation in their bylaws.

### C. BALANCING OF HARM TO PLAINTIFF VERSUS DEFENDANTS

Plaintiffs seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 22, 129 S. Ct. 365, 375–76, 172 L. Ed. 2d 249 (2008). "Violations of First Amendment rights constitute *per se* irreparable injury" even if the infringement exist for a very short period of time. *Doe by Doe v. Shenandoah Cty. Sch. Bd.,* 737 F. Supp. 913, 915–16 (W.D. Va. 1990)(citing many cases).

It is MDLP and candidate Ademiluyi, not the State nor the voters who will suffer irreparable injury, if her name is removed from the ballot prior to resolving this case. The harm would come from removing Ademiluyi from the ballot not allowing her to remain on the ballot. There are only seven candidates and six positions on the ballot. If the Court finds MDLP's rights were not violated, then the winner is easy to determine.

This Court's preliminary injunction hearing only created a delay of less than one week for Lamone to meet her deadlines, which is harmless. The State Board must provide absentee ballots to military and overseas voters by September 22, 2018. 52 U.S.C. § 20302(a)(8)(A) ("not later than 45 days before the election"). Lamone had an opportunity to add Ademiluyi's name to the ballot last Friday September 14, 2018 and still meet the federal deadlines. Lamone has not indicated that it is not possible to disrupt the process or that it's too difficult to disrupt that process. Lamone now submits an affidavit of Natasha Walker stating that the first web-based delivery will be on Thursday September 20, 2018 but during the conference call on Monday September 17, 2018, counsel failed to state to the Court that distribution of web-based ballots would begin on the day that the court set a

hearing for a preliminary injunction. Counsel for MDLP also asked counsel for Lamone prior to filing this motion when will the ballots be distributed and he refused to provide any date other than September 22, 2018. See Exhibit 1 Emails between counsel. Therefore, this Court should disregard that as a factor weighing against an injunction and force the state to immediately cancel the ballots and redeliver the ballots.

### D. THE PUBLIC INTEREST IS IN FAVOR OF A PRELIMINARY INJUNCTION

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). The public has an interest in voting for all nominees, such as MDLP's nominee, who are qualified to run for office. MDLP's nominee has been in the spotlight long enough and voters have made up their minds. There are seven candidates and six positions. If MDLP's nominee is removed from the ballot, it will dilute the power of the voters to choose the six candidates they wish to serve as Judge of the Circuit Court for Prince George's County.

### E. SECURITY

Under Rule 65(c), this Court has discretion to determine whether a bond is necessary to protect the party who could be found to have been wrongfully enjoined or restrained under a temporary restraining order or preliminary injunction. *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)("district court may dispense with filing of bond").

Lamone did not propose a bond or oppose MDLP's waiver of the bond thus this Court should not set a bond.

## CONCLUSION

MDLP respectfully request that this Court enter a preliminary injunction to enjoin Lamone from distributing ballots without April T. Ademiluyi for Judge of the Circuit Court Prince George's County 2018 General Election and restore her name to the ballot.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served on September 18, 2018 via cmecf and email to all attorneys of record for the Defendants.

Respectfully submitted,

/s/April T. Ademiluyi

April Ademiluyi, Esq. .(Bar No 29141)
The Law Office of April T. Ademiliuyi
PO BOX 1248
Laurel, MD 20725
Ph: 443-393-3984
Fax: 443-393-0416
lawofficeata@gmail.com